**D. J. BREWER, Appellant,**

v.

**The BIG LAKE STATE BANK, Appellee.**

**No. 5655.**

Court of Civil Appeals of Texas.

El Paso.

April 29, 1964.

Rehearing Denied May 27, 1964.

Hardeman, Smith & Foy, Justin A. Kever, San Angelo, for appellant.

Gordon F. Thrall, Big Lake, for appellee.

FRASER, Chief Justice.

Plaintiff, The Big Lake State Bank, sued defendants D. J. Brewer and J. E. Freeman in the 83rd Judicial District Court of Reagan County, Texas alleging that defendants composed a partnership doing business as B & F Construction Company; that defendant J. E. Freeman signed a promissory note in the name of the B & F Construction Company payable in Big Lake, Reagan County, Texas to the plaintiff; and that upon default in the making of payments on said note by J. E. Freeman, both J. E. Freeman and D. J. Brewer, as partners, became liable to The Big Lake State Bank on the balance owing on such note. Only the defendant D. J. Brewer filed a plea of privilege, contending that venue of the suit lies in the county of his

residence, Tom Green County, Texas. From the trial court's order overruling the plea of privilege, defendant D. J. Brewer appeals.

Appellant maintains that the appellee (plaintiff) did not discharge the burden placed on him by the provisions of Section 5, Article 1995, Vernon's Ann.Civ.St., and that his sworn denial is not satisfactorily met by the necessary allegations to bring suit against Mr. Brewer in Reagan County. It is not denied that Mr. Brewer lives in Tom Green County, and that he did not actually sign the note. Appellee maintains that four elements need to be proven—to-wit, the existence of the alleged partnership; that the named individuals were the identical parties composing the partnership; that the contract in question was executed by a partner as a partnership obligation; and lastly, that the written contract or note was signed by a person who had authority to do so for the partnership. Reviewing the evidence, it appears that defendants D. J. Brewer and J. E. Freeman came to appellee bank. Mr. Brewer had been known to the President of said bank, Mr. Rees, for some thirty years. The cashier, Harry Logan, had known him for some seven or eight years. Mr. Freeman, the other defendant, was not known by Mr. Rees and was known to Mr. Logan, the cashier, only as a high school acquaintance. At the hearing on the plea of privilege, only Mr. Rees and Mr. Logan testified, and their testimony was to the effect that Mr. Brewer introduced Mr. Freeman to Mr. Rees and to Mr. Logan as his partner, and explained to them that they had some construction work in Reagan County. The two witnesses for the bank also testified that Mr. Brewer asked them to give Freeman, his partner, any help he needed or might want, and that the partnership might need some credit. Also, that Freeman would open an account and sign checks and handle the partnership business in Big Lake in any way that he wanted. Further, that he (Mr. Brewer) gave Freeman the authority to borrow money. On June 10, 1957 Free-man opened an account in said bank, as follows: "B & F Construction Company by J. E. Freeman", and that on the signature card Freeman's was the only name to appear, although Brewer was present when the account was opened. The bank officials testified repeatedly that Brewer stated and admitted that he and Freeman were partners. They further testified that a line of credit in the amount of $10,000.00 was, at Brewer's request, set up for the partnership because of Mr. Brewer's statement that the B & F Construction Company might need some help in a financial way. A note for $5,000.00 was executed "B & F Construction Company by J. E. Freeman", and the witnesses testified that Brewer knew of this note. Several months later this note was absorbed in another note in the amount of $11,000.00, also executed by Freeman as "B & F Construction Company by J. E. Freeman". Brewer's personal signature does not appear on either note, and witnesses testified, as stated above, that Brewer had said that Freeman would handle matters of this nature. Witnesses also testified that Brewer knew of the $11,000.00 note about a week after it was made. This note was partially paid off, and this suit is for the balance on the $11,000.00 note.

The bank president, Mr. Rees, testified further that he had confidence in Mr. Brewer's credit, and that that was the reason the credit was extended, because he did not know Mr. Freeman. Mr. Rees testified as follows:

"Q What were the circumstances of your seeing Mr. Brewer at that time?

"A He brought Mr. Freeman in and introduced him around and said that he was his partner and they had a contract on the courthouse * * *."

Mr. Rees again states in his testimony:

"Mr. Brewer brought Mr. Freeman in and introduced him as his partner."

In another place in his testimony, during a discussion of the financing that the B & F Company might need, Mr. Rees stated as follows:

"No, sir. He stated (quoting Mr. Brewer) that Mr. Freeman was handling this."

Mr. Logan, the cashier, also testified—among other things—as follows:

"That was when Mr. Brewer brought Mr. Freeman out and introduced him as his partner and said to let him have anything he needed, that he was his partner.

"Q Did Mr. Brewer tell that to you, also?

"A Yes, sir."

Mr. Logan further testified that the $11,000.00 loan was made because of the representations by Mr. Brewer that Freeman was his partner and to let him have anything he wanted.

 There is no evidence that this money was used for anything but the B & F Construction projects. We think the following quotation, enunciated by the Supreme Court, in Crozier v. Kirker, 4 Tex. 252, is the pertinent law governing this situation:

"On the contrary, in all contracts concerning negotiable paper, the act of one partner binds all * * * if it appears on the face of the paper to be on partnership account, and to be intended to have a joint operation; and the holder may, at his election, enforce payment either jointly against the firm or separately against the party whose signature is attached * * *. Where two or more unite in partnership for carrying on a particular trade or other purpose, they become in point of law, so identified with each other that the acts and admissions of any one with reference to the common object are the acts and declarations of all and are binding upon all. The very constitution of this relationship furnishes a presumption that each individual partner is an authorized agent for the rest * * *. And the acts and representations of parties may be conclusive evidence of their partnership in favor of strangers who are not cognizant of their private arrangements, but who must be guided by external indications, although as between themselves they are not partners * * *. *Hence, if a person has represented himself to be a partner, and has been trusted as such, he is bound by that representation, and it is no defense for him to show that he was not in fact a partner * * *.* Every partner has an implied authority to bind his copartners by the making of notes and the drawing and accepting of bills for commercial purposes consistent with the object of the partnership * * *" (Emphasis ours).

We feel that the courts have long held that a partner may bind the partnership, and that such is especially true here, where defendant Brewer took Freeman, a stranger, into the bank, introduced him as a partner, and asked the bank to extend credit to the partnership and stated that Freeman would handle the matter. On the basis of these facts, we believe the trial court was correct in refusing to grant the plea of privilege, and that this record is adequate to support the appellee's contention that Mr. Brewer was a partner and possessed full knowledge of all these transactions, none of which, it is claimed, were made improperly. We repeat—the only evidence we have from appellant is the sworn affidavit of Mr. Brewer denying the existence of the partnership.

For these reasons appellant's point of error is overruled, and the action of the trial court is affirmed.