Elizabeth Jane MacMORRAN, Appellant,

v.

Frank B. WOOD, Terry Cavaleri Wood, and William C. MacMorran, Appellees.

No. 08–97–00024–CV.

Court of Appeals of Texas, El Paso.

Dec. 11, 1997.

Rehearing Overruled March 5, 1998.

Jeffrey S. Alley, Scott, Hulse, Marshall, Feuille, Finger & Thurmond, El Paso, for Appellant.

L. Randall Lee, Richard, Lee, Rowley, Cobb & Hall, El Paso, for Appellees.

Before BARAJAS, C.J., and LARSEN and McCLURE, JJ.

## OPINION

BARAJAS, Chief Justice.

This appeal arises out of an underlying breach of fiduciary duty, breach of contract, breach of the duty of good faith and fair dealing, deceptive trade practices, fraud, intentional infliction of emotional distress, and civil conspiracy case. Appellees filed special appearances claiming that they are Arizona residents and that they do not have sufficient contacts with Texas to support the exercise of jurisdiction over them. The trial court sustained their special appearances. For the reasons stated below, we affirm the trial court's decision.

## I. SUMMARY OF THE EVIDENCE

In 1975, Appellees William MacMorran and Frank Wood formed Associated Restaurant Operators, Inc. ("ARO"), a Texas Corporation. MacMorran and Wood are 50 percent shareholders, as well as officers and directors of ARO. Also in 1975, ARO opened a restaurant in Tucson, Arizona called the Solarium.

In 1983, MacMorran and Wood formed a partnership, WOMAC Investments, which purchased the land and building leased by ARO for the Solarium. The partnership agreement set forth that the only partners were MacMorran and Wood. Further, it stated that the spouses, Appellant MacMorran and Appellee Cavaleri Wood (Cavaleri), were not signing as partners, but only to evidence their consent and approval of the partnership agreement and to bind their community or other interests, if any, in property subject to the partnership agreement. The partners, MacMorran and Wood, also executed a buy-sell agreement regarding the partnership, which further indicated that Appellant and Cavaleri were not signing as partners, but to evidence their consent and approval of the terms and conditions of the agreement and to bind their community interests, if any, in the shares which were the subject of the agreement.

When WOMAC purchased the restaurant property, the existing lease was assigned to WOMAC. Thus, ARO was the lessee and WOMAC became the lessor. On August 1, 1983, the lease was amended and the rent was lowered from $14,000 a month to $6,000 a month. On January 1, 1988, the lease was amended a second time and the rent was raised to $10,000 a month. On January 1, 1990, the lease was again amended and the rent was lowered to $7,000 a month. The rent was lowered one final time, without written addendum, to an amount that equals the mortgage payment.

The underlying suit began with the divorce of Appellant and MacMorran. The divorce decree became final in 1991 and provided in part that Appellant was awarded an undivided one-half interest in their marital community's interest in WOMAC. Subsequently, the judge of the Arizona superior court who handled the divorce proceedings entered a finding that Appellant was not a partner of WOMAC pursuant to the divorce decree. Rather, he found that Appellant was entitled to an undivided 25 percent interest in the assets of WOMAC and that Appellee MacMorran had fulfilled his obligations by transferring said percent to Appellant. Further, he found that Appellant was not entitled to a monthly payment of 25 percent of the gross monthly rent, but only to an undivided 25 percent interest in the net rents.

On June 30, 1992, Wood and MacMorran held a "special meeting" where they dissolved WOMAC and waived the buy-sell agreement. The dissolution took place in Arizona to satisfy the terms of the Arizona divorce decree. The restaurant property was divided as follows: 25 percent to Appellant individually, 25 percent to MacMorran, and 50 percent to Wood and Cavaleri as joint tenants and each was issued a quitclaim deed.

After WOMAC was dissolved, MacMorran and Wood formed a new corporation, MacMorran–Wood Corp., which assumed the les-

sor's role in the old WOMAC–ARO lease. MacMorran–Wood Corp. used an entity called MW Joint Venture as its agent to collect the rentals from ARO. Believing the arrangement tortious, Appellant filed suit against ARO, MacMorran, Wood, and Cavaleri, alleging that Appellees committed constructive fraud, breach of their fiduciary duty, breach of the duty of good faith and fair dealing, and conspiracy. On June 1, 1995, the trial court heard Appellees' Special Appearance and granted it on January 4, 1996. Appellees were severed from the underlying case and this appeal follows.

## II. *DISCUSSION*

Appellant brings six points of error challenging the trial court's granting of Appellees' special appearances. We begin with a discussion of the standard of review.

### A. **Standard of Review**

■ When a defendant challenges a court's exercise of personal jurisdiction through a special appearance, he carries the burden of negating all bases of personal jurisdiction. *See Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 203 (Tex.1985); *Siskind v. Villa Found. for Educ., Inc.,* 642 S.W.2d 434, 438 (Tex.1982); *Nikolai v. Strate,* 922 S.W.2d 229, 236 (Tex.App.—Fort Worth 1996, writ denied); *Hayes v. Wissel,* 882 S.W.2d 97, 99 (Tex.App.—Fort Worth 1994, no writ). When a trial court overrules a special appearance, the defendant should request it to make findings of fact according to TEX.R.CIV.P. 296. *Runnells v. Firestone,* 746 S.W.2d 845, 849 (Tex.App.—Houston [14th Dist.], writ denied, 760 S.W.2d 240 (Tex.1988). Absent such findings, we view the trial court's judgment as impliedly finding all the necessary facts to support its judgment. *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990); *In re W.E.R.,* 669 S.W.2d 716, 716–17 (Tex.1984); *Runnells,* 746 S.W.2d at 848. Where a complete statement of facts appears in the record, however, these implied findings are not conclusive and an appellant may challenge the sufficiency of the evidence. *Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989). Where such points are raised, the standard of review to

be applied is the same as that to be applied in the review of jury findings or a trial court's findings of fact. *Id.*

■ When a personal jurisdictional question is reviewed, we review all the evidence. *Nikolai,* 922 S.W.2d at 236; *Hotel Partners v. KPMG Peat Marwick,* 847 S.W.2d 630, 632 (Tex.App.—Dallas 1993, writ denied). The correct standard of review of the evidence is a factual sufficiency review, not a de novo review. *Nikolai,* 922 S.W.2d at 236; *Hotel Partners,* 847 S.W.2d at 632; *NCNB Texas Nat'l Bank v. Anderson,* 812 S.W.2d 441, 443–44 (Tex.App.—San Antonio 1991, no writ). Thus, we may reverse the decision of the trial court only if its ruling is so against the great weight and preponderance of the evidence as to be manifestly ʹerroneous or unjust. *In re King's Estate,* 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951); *Runnells,* 746 S.W.2d at 849. In reviewing such a point of error, we must consider and weigh all of the evidence, both the evidence that tends to prove the existence of a vital fact as well as evidence that tends to disprove its existence. *Ames v. Ames,* 776 S.W.2d 154, 158–59 (Tex.1989), *cert. denied,* 494 U.S. 1080, 110 S.Ct. 1809, 108 L.Ed.2d 939 (1990); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). So, considering the evidence, if a finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the point should be sustained, regardless of whether there is some evidence to support it. *Watson v. Prewitt,* 159 Tex. 305, 305, 320 S.W.2d 815, 816 (1959); *King's Estate,* 244 S.W.2d at 661.

■ If evidence supports the implied findings of fact, we must uphold the trial court's judgment on any legal theory supported by the evidence. *Worford,* 801 S.W.2d at 109; *Point Lookout West, Inc. v. Whorton,* 742 S.W.2d 277, 278 (Tex.1987); *Runnells,* 746 S.W.2d at 848. This is so regardless of whether the trial court articulates the correct legal reason for the judgment. *Harrington v. Railroad Comm'n,* 375 S.W.2d 892, 895 (Tex.1964); *Marifarms Oil & Gas, Inc. v. Westhoff,* 802 S.W.2d 123, 125 (Tex.App.—Fort Worth 1991, no writ).

## B. Exercising Personal Jurisdiction

 For a Texas court to exercise personal jurisdiction over a nonresident, two conditions must be met: the Texas long-arm statute must authorize it and it must be consistent with the due process guarantees provided in our federal and state constitutions. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex.1990); *Nikolai*, 922 S.W.2d at 233; *see also* U.S. CONST. amend. XIV; TEX CONST. art. I, § 19; TEX.CIV.PRAC. & REM. CODE ANN. § 17.042 (Vernon Supp.1997). Under the Texas long-arm statute, personal jurisdiction extends to nonresident defendants that either continuously and systematically "do business" in Texas or are parties to litigation arising from or related to "business" they conducted in Texas. *O'Brien v. Lanpar Co.*, 399 S.W.2d 340, 342 (Tex.1966); *Nikolai*, 922 S.W.2d at 233. The Texas long-arm statute provides:

> In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:
>
> (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
>
> (2) commits a tort in whole or in part in this state; or
>
> (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside the state.

TEX.CIV.PRAC. & REM.CODE ANN. § 17.042 (Vernon Supp.1997).

 The broad language of the Texas long-arm statute's "doing business" requirement has been construed to reach as far as the federal constitution allows. *Guardian Royal Exch. Assurance Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991); *Nikolai*, 922 S.W.2d at 234.

A plaintiff must meet two requirements to satisfy due process and justify the exercise of personal jurisdiction over a nonresident defendant. A plaintiff must first demonstrate that the nonresident defendant has purposefully established "minimum contacts" with Texas. *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 105, 107

S.Ct. 1026, 1028, 94 L.Ed.2d 92, 100 (1987); *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945); *Nikolai*, 922 S.W.2d at 234; *Guardian Royal Exch.*, 815 S.W.2d at 230. Next, a plaintiff must show that the "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158, 90 L.Ed. at 102; *Schlobohm*, 784 S.W.2d at 357; *Nikolai*, 922 S.W.2d at 234.

The first requirement, the minimum contacts analysis, has been well developed by the United States Supreme Court. Protecting the nonresident defendant is a fundamental purpose of the minimum contacts test. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490, 498 (1980). This requires determining whether the nonresident defendant has purposely availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528, 542 (1985). The "purposeful availment" requirement guarantees that a nonresident defendant will not be compelled to defend a suit in a jurisdiction based solely on "random," "fortuitous," or "attenuated" contacts or the "unilateral activity of another party or a third person." *Id.* at 475, 105 S.Ct. at 2183, 85 L.Ed.2d at 542; *see also Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404, 412–13 (1984); *Nikolai*, 922 S.W.2d at 234. Moreover, nonresident defendants must have fair warning that particular activities may subject them to a foreign sovereign's jurisdiction. *Burger King*, 471 U.S. at 472, 105 S.Ct. at 2181–82, 85 L.Ed.2d at 540–41; *Nikolai*, 922 S.W.2d at 234. A nonresident defendant must perform some overt act to subject it to the possibility of being compelled to defend a suit in a foreign court.

 Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activ-

ities at residents of the forum and the litigation results from alleged injuries that "arise out of or relate to" those activities. *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182, 85 L.Ed.2d at 540–41 (footnote omitted) (citations omitted).

When the contacts are the proximate result of the nonresident defendant's actions creating a substantial connection with the foreign state, exercising personal jurisdiction is proper. *Id.* at 474–75, 105 S.Ct. at 2183, 85 L.Ed.2d at 541–42; *see also Nikolai,* 922 S.W.2d at 234. The substantial connection between the forum state and the nonresident defendant, which is required for a finding of minimum contacts, must occur from the nonresident defendant's action or conduct purposefully directed toward the forum state. *Burger King,* 471 U.S. at 474–75, 105 S.Ct. at 2183, 85 L.Ed.2d at 541–42; *Nikolai,* 922 S.W.2d at 235; *Guardian Royal Exch.,* 815 S.W.2d at 230. A nonresident defendant's isolated contacts with the forum state or its residents are insufficient for a court to assert personal jurisdiction over that defendant. *Burger King,* 471 U.S. at 475 n. 18, 105 S.Ct. at 2184 n. 18, 85 L.Ed.2d at 543 n. 18; *Nikolai,* 922 S.W.2d at 234. For there to be the necessary minimum contacts, there must be continuing contacts. *Nikolai,* 922 S.W.2d at 234.

The minimum contacts analysis is divided into specific and general jurisdiction. In the present case, Appellant argues that the trial courts may exercise its jurisdiction over Appellees on the basis of specific jurisdiction. When specific jurisdiction is asserted, the minimum contacts requirement is satisfied if the cause of action arises from or relates to the nonresident defendant's contact with the forum state. *Helicopteros,* 466 U.S. at 414 n. 8, 104 S.Ct. at 1872 n. 8, 80 L.Ed.2d at 411 n. 8; *Guardian Royal Exch.,* 815 S.W.2d at 227; *Nikolai,* 922 S.W.2d at 235. However, the nonresident defendant's purposeful conduct must have caused the contact, not the unilateral activity of the plaintiff or others. *Helicopteros,* 466 U.S. at 417, 104 S.Ct. at 1873, 80 L.Ed.2d at 412–13; *Nikolai,* 922 S.W.2d at 235. Additionally, the nonresident defendant must have "purposefully directed" its activities toward the forum, and the litigation must result from alleged injuries that arise from or relate to those activities. *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182, 85 L.Ed.2d at 540–41; *Nikolai,* 922 S.W.2d at 235. Thus, the minimum contacts analysis centers on the relationship among the defendant, the forum, and the litigation. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872, 80 L.Ed.2d at 410–11; *Schlobohm,* 784 S.W.2d at 357; *Nikolai,* 922 S.W.2d at 235.

After a determination that a nonresident defendant has purposefully established minimum contacts with the forum state, the court must determine whether the assertion of personal jurisdiction comports with "fair play and substantial justice" by evaluating the contacts in light of other factors. *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184, 85 L.Ed.2d at 543; *Nikolai,* 922 S.W.2d at 235. These factors include:

¶ the burden on the defendant;

¶ the interest of the forum state in adjudicating the dispute;

¶ the plaintiff's interest in obtaining convenient and effective relief;

¶ the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and

¶ the shared interest of the several states in furthering fundamental substantive social policies.

*Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184, 85 L.Ed.2d at 543; *Nikolai,* 922 S.W.2d at 235. Thus, the exercise of jurisdiction may not be fair and reasonable under the facts in a particular case, even where a nonresident defendant has purposely established minimum contacts with the forum state. *Burger King,* 471 U.S. at 477–78, 105 S.Ct. at 2184–85, 85 L.Ed.2d at 543–44; *Nikolai,* 922 S.W.2d at 235.

In Points of Error Nos. One and Two, Appellant argues that the trial court erred in granting Appellee William MacMorran's special appearance and that the trial court erred in failing to find as a matter of law that Appellee MacMorran undertook actions sufficient to satisfy due process and the Texas long-arm statute. MacMorran has been a resident of Arizona since 1978. He does not

own property in Texas, nor does he maintain a place of business in Texas. While he is a shareholder, officer and director in ARO, a Texas corporation, ARO has not done any business in Texas since 1978. MacMorran makes child support and other payments to Appellant pursuant to their Arizona divorce decree. His only other contact with Texas was the forwarding of the deeds from WO-MAC, the minutes of the June 30, 1992 special meeting of WOMAC, and Appellant's copy of a schedule E, at the request of Appellant's attorney.

Appellant argues that the materials sent to her attorney by MacMorran, the tax returns sent to her by WOMAC, and the fact that ARO's rent was reduced by MacMorran and Wood, when taken together, provide the basis for the exercise of specific jurisdiction, Appellant's complaint centers on Appellees' failure to inform her and failure to provide information. The mailing of requested materials to Appellant's attorney does not give rise to these claims and thus provides no basis for exercising jurisdiction over Mac-Morran.

■ Next, Appellant claims that when WOMAC sent her a partnership tax return which showed her as a partner, she was effectively drafted into a partnership. A partnership is an association of two or more persons to carry on as co-owners of a business for profit. TEX.REV.CIV.STAT.ANN. art. 6132b § 6 (Vernon 1970). The essential elements of a partnership are (1) an agreement to share profits and losses, (2) a mutual right of control, and (3) a community of interest in the partnership. *City of Corpus Christi v. Bayfront Assoc., Ltd.*, 814 S.W.2d 98, 107 (Tex.App.—Corpus Christi 1991, writ denied); *Conrad v. Judson*, 465 S.W.2d 819, 826 (Tex.Civ.App.—Dallas 1971, writ ref'd n.r.e.), *cert. denied*, 405 U.S. 1041, 92 S.Ct. 1312, 31 L.Ed.2d 582 (1972). Appellant acknowledged that she never agreed to share any losses with respect to the restaurant property. The original partnership agreement is unambiguous in listing MacMorran and Woods as the only partners.

Appellant cites several cases that she contends show that a partnership may be proven by a "holding out". *In re Saunders*, 155

B.R. 405 (W.D.Texas); *Brewer v. Big Lake State Bank*, 378 S.W.2d 948 (Tex.Civ.App.—El Paso 1964, no writ). While this is true, these cases are distinguishable from the present case. In *Saunders*, the bankruptcy court was tasked with determining whether a group of individuals was acting as a partnership. While the court considered income tax returns as one factor in finding that a partnership existed, the court noted that intent to form a partnership was most important in the determination. Other elements of a partnership were also present. Specifically, the individuals agreed to share profits and losses, they held themselves out to the public as a partnership, and they identified themselves as a partnership in several loan transaction documents and on a bank account. *Saunders*, 155 B.R. at 410–411.

In *Brewer*, the issue was whether venue was proper in the county where the partnership signed notes made payable to a bank, or whether venue should lie in the county of the copartner's residence. The existence of a partnership was proven by several key facts, not present in the case at bar. First, Mr. Brewer introduced Mr. Freeman to the bank president as his "partner" and explained that they needed credit for their construction business, B & F Construction Company. *Id.* at 950. Brewer told the bank president that Freeman would sign checks and handle the partnership business. *Id.* Furthermore, Brewer also gave Freeman the authority to borrow money. *Id.* While the account was opened in the company name with only Freeman's name appearing on the signature card, Brewer was present and was aware of the account. *Id.* The bank president testified that since he did not know Freeman, credit was extended only because he had confidence in Brewer's credit and because Brewer presented Freeman as his partner. *Id.* The court held that based on the actions of Brewer, he had knowledge of the transactions and was himself a partner. *Id.* at 951. These facts are clearly distinguishable from the facts of the case at bar. Appellant was never introduced as a partner, nor did the partnership make such a representation to gain financial backing or for any other purpose. Further, Appellant was never given the au-

thority to handle any partnership business nor did she assume such duties. While acts and representations of the parties may be evidence of a partnership, such facts are not present in this case.

The tax returns listing Appellant as a partner do not by themselves create a partnership. In fact, the majority of the evidence, i.e., the partnership agreement, the divorce decree, testimony that Appellant did not share in losses, shows that Appellant was not a partner. Since the income tax returns do not give rise to or relate to her causes of action, they do not support the exercise of jurisdiction over Appellees.

Next, Appellant claims that by reducing the rent paid for the restaurant property, MacMorran and Wood were able to divert money away from a fund in which Appellant had an interest to a fund in which she did not. Appellant claims that this funneling of money was done through a Texas corporation, ARO, and thus Appellees subjected themselves to the jurisdiction of a Texas court. However, the evidence establishes that the reductions in rent were made prior to 1990, and prior to Appellant's divorce. These reductions were made in Arizona while Appellant was still a resident of Arizona. The only connection with Texas is that a Texas corporation was involved. Jurisdiction over an individual cannot be based on jurisdiction over a corporation unless the corporation is the alter ego of the individual. *Vosko v. Chase Manhattan Bank, N.A.*, 909 S.W.2d 95, 99 (Tex.App.—Houston [14th Dist.] 1995, writ denied); *Clark v. Noyes*, 871 S.W.2d 508, 509 (Tex.App.—Dallas 1994, no writ). Appellant has made no allegations of alter ego. Thus, the reductions in rent cannot give rise to Appellant's causes of action.

After reviewing all of the evidence, we conclude that the trial court's ruling is not so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. Accordingly, we overrule Appellant's Points of Error Nos. One and Two.

In Points of Error Nos. Three and Four, Appellant argues that the trial court erred in granting Appellee Frank Wood's special appearance and that the trial court erred in failing to find as a matter of law that Appellee Wood undertook actions sufficient to satisfy due process and the Texas long-arm statute. Wood has been a resident of Arizona since 1978. He has not been a resident of Texas since 1978 and does not own any property in Texas. He does not maintain a place of business in Texas and does not conduct business in his individual capacity in Texas. He does not vote in Texas, nor does he have a car registered in Texas. While he is a shareholder, officer and director of ARO, a Texas corporation, ARO has not done business in Texas since 1978. He did send one letter to Appellant in his corporate capacity on July 1, 1994. Finally, he visits his mother once a year in El Paso.

As previously discussed, jurisdiction over an individual cannot be based on jurisdiction over a corporation with which he is associated unless the corporation is the alter ego of the individual. *Vosko*, 909 S.W.2d at 99, *Clark*, 871 S.W.2d at 509. Appellant has made no allegations of alter ego in this case. Thus, the fact that ARO is a Texas corporation and Wood is involved in ARO does not provide any basis for specific jurisdiction over Wood in Texas. The letter sent to Appellant by Wood was dated July 1, 1994, after this suit was filed. Therefore, Appellant's claims could not have arisen from or be related to the letter and could not form the basis of specific jurisdiction. Finally, the yearly visits to his mother are not related to the causes of action asserted, nor are they the type of contacts for which Wood could expect to be haled into to a Texas court. Thus, the visits cannot form the basis for jurisdiction.

After reviewing all of the evidence, we conclude that the trial court's ruling is not so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. Accordingly, we overrule Appellant's Points of Error Nos. Three and Four.

In Points of Error Nos. Five and Six, Appellant argues that the trial court erred in granting Appellee Terry Cavaleri Wood's special appearance and that the trial court erred in failing to find as a matter of law that Cavaleri undertook actions sufficient to satis-

fy due process and the Texas long-arm statute. Cavaleri has been a resident of Arizona since 1976 and has never been a resident of or owned property in Texas. She has never maintained a place of business in Texas, nor has she conducted any business in Texas. She has never been a partner in WOMAC and never held herself out as such. Finally, she has never been an officer, director or shareholder of ARO, and has never worked for ARO in Texas. Appellant's fourth amended petition and brief do not reveal allegations that Cavaleri committed any act in Texas. When the plaintiff alleges no acts of the nonresident defendant in the forum, the defendant satisfies the burden to negate all bases for jurisdiction by proving that she is a nonresident. *Hotel Partners,* 847 S.W.2d at 634. The evidence is undisputed that Cavaleri is a nonresident and since Appellant has not alleged that Cavaleri committed any acts in Texas, Cavaleri has satisfied her burden of negating all bases for the exercise of personal jurisdiction over her. After reviewing all of the evidence, we conclude that the trial court's ruling is not so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. Accordingly, Appellant's Points of Error Nos. Five and Six are overruled.

Having overruled each of Appellant's points of error, we affirm the judgment of the trial court.