Reversed and Rendered and Memorandum Opinion filed March 6, 2007








Reversed
and Rendered and Memorandum Opinion filed March 6, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00387-CV

____________

 

MICHAEL URBAN, Appellant

 

V.

 

PAULETTE BARKER, ET. AL., Appellee

 



 

On Appeal from the Probate
Court No. 1

Harris County, Texas

Trial Court Cause No. 355,868-402

 



 

M E M O R A N D U M    O P I N I O N

Appellant, Michael Urban, appeals the denial of his special
appearance based on lack of personal jurisdiction.  Because we find a want of
both general and specific personal jurisdiction, we reverse and render judgment
dismissing the cause of action.








Robert Barker owned shares of Thermal Solutions, Inc. (ATSI@), a corporation
incorporated in Colorado and having its headquarters in Colorado.  TSI had an
office in Pasadena, Texas.  Barker contracted with Emmett Lescroart to sell his
shares of TSI.  To comply with a right of first refusal stock restriction agreement,
Barker informed TSI of his decision to sell.  Urban responded on behalf of TSI
that neither the company nor any shareholders wanted to match the offer and,
therefore, Barker was free to sell to Lescroart.  On the advice of his
attorney, Barker sent another letter to TSI asking to conclude his transaction
with Lescroart by sending documents and checks through TSI=s attorney located
in Colorado.  Urban responded in writing, stating he had no objection, and the
sale proceeded.  Barker retained a Colorado attorney to review the final
documents.  Approximately thirteen months after the sale, Lescroart sold the
shares for a profit to Team, Inc., a Texas corporation.

Barker subsequently died.  His widow, Paulette Barker (AMrs. Barker@), brought suit in
the probate court as executor and sole beneficiary under the will and
individually as claimant and creditor of the defendants.  The defendants
include TSI and seven other corporations, and Lescroart and Urban as
individuals.  Mrs. Barker alleged breach of fiduciary duty, breach of contract,
conspiracy, and violations of the Texas Securities Act, the Texas Property
Code, and the Texas Deceptive Trade Practices Act.  Urban made a special
appearance to object to the trial court exercising jurisdiction over him as an
individual.  The trial court denied his special appearance, and he appeals.

Standard of Review

The plaintiff bears the initial burden of pleading
sufficient allegations to bring the nonresident defendant within the provisions
of the long-arm statute.  BMC Software Belgium, N.V. v. Marchand, 83
S.W.3d 789, 793 (Tex. 2002).   In a special appearance, the burden of proof is
then on the nonresident to negate all possible grounds for personal
jurisdiction.  Id.  The existence of personal jurisdiction is a question
of law, which we determine de novo.  Id. at 794.  The trial court,
however, must frequently resolve questions of fact before reaching the question
of jurisdiction.  Id. 








If a trial court enters an order denying a special
appearance, and the trial court issues findings of fact and conclusions of law,
the appellant may challenge the fact findings on legal and factual sufficiency
grounds.  BMC Software Belgium, N.V., 83 S.W.3d at 794.  Where a
statement of facts is contained in the record, as is the case here, findings of
fact are not conclusive on appeal if the contrary is established as a matter of
law, or if there is no evidence to support the findings.  Middleton v.
Kawasaki Steel Corp., 687 S.W.2d 42, 44 (Tex. App.CHouston [14th
Dist.] 1995, writ ref=d n.r.e.) (citing Swanson v. Swanson, 
228 S.W.2d 156, 158 (Tex. 1950)).  With the exception of numbers one and six,
we find no evidence in the record to support the findings of fact.[1]








Adequacy of the Affidavit

As a preliminary matter, we must address Urban=s objection to
Mrs. Barker=s affidavit.  A special appearance determination shall
be made by the court on the basis of the pleadings, any stipulations made by
and between the parties, such affidavits and attachments as may be filed by the
parties, the results of the discovery process, and any oral testimony.  Tex. R. Civ. P. 120a(3).  Here, the
trial court based its denial on the written submissions.  In his reply to Mrs.
Barker=s response to his
special appearance, Urban objected to facts in the affidavit filed as evidence
by Mrs. Barker, and objected to her lack of personal knowledge.  Because Urban
objected to the affidavit in the trial court below, the objection is preserved
for appeal.








Affidavits Ashall be made on personal knowledge, shall
set forth specific facts as would be admissible in evidence, and shall show
affirmatively that the affiant is competent to testify.@  Tex. R. Civ. P. 120a(3).  To avoid
being conclusory, an affidavit must contain specific factual bases, admissible
in evidence and upon which conclusions are drawn.  Nichols v. Lightle,
153 S.W.3d 563, 570 (Tex. App.CAmarillo 2004, pet. denied).  Merely
reciting that an affidavit is made on personal knowledge is insufficient.  Humphreys
v. Caldwell, 888 S.W.2d 469, 470 (Tex. 1994).  Instead, the affidavit must
go further and disclose the basis on which the affiant has personal knowledge
of the facts asserted.  Radio Station KSCS v. Jennings, 750 S.W.2d 760,
762 (Tex. 1988).  Statements made in the affidavit need factual specificity
such as time, place, and the exact nature of the alleged facts. Brownlee v.
Brownlee, 665 S.W.2d 111, 112 (Tex. 1984).  A special appearance affidavit
must be Adirect,
unmistakable, and unequivocal@ as to the facts sworn to, so that perjury
can be assigned upon it.  Int'l Turbine Serv., Inc. v. Lovitt, 881
S.W.2d 805, 808 (Tex. App.CFort Worth 1994, writ denied).








Mrs. Barker states no basis to show how she acquired any
personal knowledge as to the statements made in her affidavit.[2] 
A person=s position or job
responsibilities can peculiarly qualify him to have personal knowledge of facts
and establish how he learned of the facts.  First Nat=l Bank in Munday
v. Lubbock Feeders, L.P., 183 S.W.3d 875, 881 (Tex. App.CEastland 2006,
pet. denied).  Numbered paragraph one merely contains boilerplate language as
to personal knowledge of the matters contained in her affidavit.  Mrs. Barker=s only statement
concerning her personal involvement with this matter is in paragraph two: she
was married to Barker.  Even this statement lacks facts as to when they
married, or even if she was married to Barker when the original transaction
occurred.  Being married to Barker, alone, does not Apeculiarly qualify@ Mrs. Barker to
have any personal knowledge about the stock transaction, TSI=s business
practices, or Urban=s individual activities.  In paragraph
nine of her affidavit, Mrs. Barker states ATSI vacated its
Pasadena, Texas facility in October or November 2004.@  (Emphasis
added).  This statement is neither Adirect,@ Aunmistakable,@ nor Aunequivocal.@  Someone with
personal knowledge of a company=s business would certainly know when it
vacated one of its facilities.  Paragraph eleven states Urban continued to
travel to Texas until sometime in mid 2005.  Again, this statement is neither Adirect,@ Aunmistakable,@ nor Aunequivocal,@ and it shows the
lack of personal knowledge Mrs. Barker has as to Urban=s actions as an
individual. 








In paragraph two, Mrs. Barker states Barker founded the
company with Urban, a fact denied by Urban in his reply to Mrs. Barker=s response to his
special appearance.  The record contains no evidence, such as paperwork, to
show when and under what circumstances her husband acquired the stock in order
to challenge Urban=s denial.  While Mrs. Barker=s first amended
original petition alleges Urban purchased her husband=s stock with
Lescroart, her affidavit makes no mention of this.  In paragraph twelve of the
petition, Mrs. Barker states TSI is a Colorado corporation, but Mrs. Barker=s brief calls TSI
a ATexas-based
company,@ that was Aheadquartered in
Pasadena, Texas.@  In her affidavit, Mrs. Barker refers to
the Pasadena office as the Ainitial business location@ or the APasadena, Texas
facility.@  Although these latter statements resemble more a
description of a satellite office than a base for a corporation, even these
statements lack factual proof or personal knowledge.  The remainder of her
affidavit consists of additional conclusory statements concerning Urban=s travels, his
job, and the business of TSI, without any factual specificity as to dates,
times, with whom Urban met or where he met them.  We conclude Mrs. Barker=s affidavit is
insufficient to satisfy Tex. R. Civ. P. 120a(3)
for use as evidence and, thus, we will not consider it in determining the
issues.

Personal Jurisdiction

Urban presents three issues on appeal: 1) the trial court
lacks minimum contacts to assert personal jurisdiction over him; 2) the
fiduciary shield doctrine encompasses his contacts; and 3) jurisdiction over
him offends traditional notions of fair play and substantial justice.

This court looks at both the reporter=s record and the
clerk=s record when
deciding the appeal.  If all the evidence is filed with the clerk, then the
appeal should be decided on the clerk=s record alone.  Michiana
Easy Livin= Country, Inc. v. Holten, 168 S.W.3d 777,
782 (Tex. 2005) (citing Otis Elevator Co. v. Parmelee, 850 S.W.2d 179,
181 (Tex. 1993)).  Here, the reporter=s record indicates
all the evidence was contained in the clerk=s record.  Thus,
only the clerk=s record, without Mrs. Barker=s affidavit, are
before us.

Texas courts may acquire personal jurisdiction over a
nonresident defendant if two requirements are satisfied.  First, the Texas
long-arm statute must authorize the exercise of jurisdiction.  Schlobohm v.
Schapiro, 784 S.W.2d 355, 356 (Tex. 1990).  Second, the exercise of
jurisdiction must be consistent with federal and state constitutional
guarantees of due process.  Id.     








 The Texas long-arm statute authorizes the exercise of
jurisdiction over nonresidents Adoing business@ in Texas.  Tex. Civ. Prac. & Rem. Code Ann. ' 17.042 (Vernon
1997).[3] 
The list of activities which constitute Adoing business@ is not exhaustive
and may include other acts.  Vosko v. Chase Manhattan Bank N.A., 909
S.W.2d 95, 98 (Tex. App.CHouston [14th Dist.] 1995, writ denied). 
Texas= long-arm statute
is broad, but only extends as far as the U.S. Constitution will allow.  Michiana,
168 S.W.3d at 788.  Since the long-arm statute=s concept of Adoing business@ extends as far as
due process will allow, any activity or contact which satisfies due process
also constitutes doing business, and any contact which does not satisfy due
process does not constitute doing business.  Vosko, 909 S.W.2d at 98. 
Therefore, we need not analyze the Adoing business@ requirement
separate from the due process requirement.

                                 Specific Jurisdiction








Personal jurisdiction over a nonresident defendant meets
the due process requirements of the Constitution when two conditions are met:
1) the defendant has established minimum contacts with the forum state; and 2)
the exercise of jurisdiction does not offend the traditional notions of fair
play and substantial justice.  Int=l Shoe Co. v.
Washington, 326 U.S. 310, 316 (1945).  Minimum contacts can establish either
specific or general jurisdiction.  Helicopteros Nacionales de Columbia, S.A.
v. Hall, 466 U.S. 408, 413B14 (1984).  For specific jurisdiction to
be found, the plaintiff=s cause of action must arise out of or
relate to the nonresident=s contacts with Texas.  Vosko, 909
S.W.2d at 98.  The minimum contacts analysis for specific jurisdiction focuses
on the relationship among the defendant, the forum, and the litigation.  Helicopteros,
466 U.S. at 414.  

The Atouchstone@ of jurisdictional
due process is purposeful availment.  Michiana, 168 S.W.3d at 784.  In
each case, there must be Asome act by which the defendant
purposefully avails itself of the privilege of conducting activities within the
forum State, thus invoking the benefits and protections of its laws.@  Id.
(quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).  First, only the
defendant=s contacts count.  Id. at 785.  This ensures a
defendant will not be brought into court as a result of the unilateral activity
of another party or third person.  Burger King v. Rudzewicz, 471 U.S.
462, 475 (1985).  Second, the acts relied on must be Apurposeful@ rather than
random, isolated, or fortuitous.  Id. (quoting Keeton v. Hustler
Magazine, Inc., 465 U.S. 770, 774 (1984)).  Third, the defendant must seek
some benefit or profit by Aavailing@ itself of the
jurisdiction.  Michiana, 168 S.W.3d at 785. 

Here, the litigation arises out of, and relates to, a
contract between Barker and Lescroart to sell shares of TSI stock, and allegations
of fraud and conspiracy.  A minimum contacts analysis must focus on Urban, the
state of Texas, and the litigation.  Urban is a resident of Colorado, owning no
personal or real property in Texas.  To exercise specific jurisdiction over
Urban individually, there must be some act in regards to the contract or
allegations by which Urban purposefully availed himself of the benefits and
protections of the laws of Texas.  Barker, a Texas resident, contacted Urban at
his office in Colorado concerning the sale of the shares.  Urban was not a
party to the contract.  Urban, in his role as president of TSI, responded to
Barker on behalf of the corporation.  Barker again wrote and asked for
assistance from the corporation=s Colorado attorneys in finalizing the
sale.  Urban agreed.  Barker, who was represented by a Colorado lawyer,
finalized the sale in Colorado, and designated Colorado law applied to the
contract and any controversies.[4]








According to Urban=s evidence, his
trips to Texas did not involve Barker=s transaction. 
Mrs. Barker=s first amended original petition alleges Urban bought
Barker=s shares with
Lescroart.  Urban=s briefs specifically deny this
allegation, and during oral arguments, Urban again denied purchasing any of Barker=s stock.  Mrs.
Barker=s first amended
original petition and supporting documents do not contain a copy of the sales
contract or stock transfer documents to prove otherwise.  With Urban not
involved in the purchase of Barker=s stock, it is difficult
to deduce any benefit or profit Urban would have gained from the sale of the
stock to Lescroart that would qualify as Urban availing himself of the
protections and benefits of Texas law.  








Mrs. Barker=s first amended original petition also
contains conclusory statements alleging misrepresentations and fraudulent
conduct by Urban which induced Barker to make the sale.  These statements
contain no dates or times when the misrepresentations could have occurred, and
no manner, such as telephone calls, letters, or emails, in which the
misrepresentations could have been made.  Merely alleging a defendant committed
a tort in Texas, is not dispositive of the jurisdictional issue.  Wright v.
Sage Eng=g, Inc., 137 S.W.3d 238,
251 (Tex. App.CHouston [1st Dist.] 2004, pet. denied).  In tort
liability, especially misrepresentation cases, it is better for judges to limit
their jurisdictional decisions to the actual business contacts, rather than on
what the parties thought, said, or intended.  Michiana, 168 S.W.3d at
791.  As one example, paragraph eighteen of Mrs. Barker=s first amended
original petition states Athe secretive actions of Urban and
Lescroart, and various shareholder agreements orchestrated by Urban and
Lescroart, made it impossible for plaintiffs to receive a fair price for their
stock.@  The record fails
to show where these alleged secret actions took place, where the various
shareholder agreements were created, or what personal benefit Urban received
from these alleged misrepresentations.  The torts of fraud and
misrepresentation, and the derivative tort of conspiracy[5]
have not been alleged here with the specific contacts necessary to warrant the
exercise of jurisdiction over Urban.  The allegations fail to show Urban
purposefully availed himself of the protection of the laws of Texas and,
therefore, could expect to be called into court here.[6]
 

Based on the evidence found in the record, Urban=s contacts between
the litigation and forum consist of a Texas resident contacting Urban in
Colorado, regarding a contract to which Urban was not a party and from which he
derived no benefit, with performance of the contract in Colorado.  Thus, we
find the necessary minimum contacts lacking to exercise specific jurisdiction
over Urban as an individual.  We now turn to the issue of general jurisdiction.

General
Jurisdiction








A trial court may exercise general jurisdiction over a
nonresident defendant if the nonresident has contacts with the forum state
which are continuous and systematic, so that the forum may exercise personal
jurisdiction over the defendant even if the cause of action did not arise from
or relate to activities conducted within the forum state.  BMC Software
Belgium, N.V., 83 S.W.3d at 796.  When general jurisdiction is asserted,
the minimum contacts analysis is more demanding and requires a showing of
substantial activities in the forum state.  Schlobohm, 784 S.W.2d at
357.  A corporate officer, in his individual capacity, cannot be said to have
established minimum contacts with the forum based on the activities of his
corporation, absent other evidence, such as proof sufficient to pierce the
corporate veil.  Siskind v. Villa Found. for Educ., Inc., 642 S.W.2d
434, 438 (Tex. 1982).  This court applied the fiduciary shield doctrine,[7]
in a general jurisdiction situation, stating personal jurisdiction over an
individual may not be based on jurisdiction over a corporation with which an
individual is associated unless the corporation is the alter ego of the
individual.  Vosko, 909 S.W.2d at 99.  Here, no showing has been made
that Urban is the alter ego of TSI and, therefore, this situation does not
apply.








The fiduciary shield doctrine also protects employees of a
corporation from personal jurisdiction when the employee=s actions are on
behalf of his employer.  Garner, 966
S.W.2d at 803.  However, even if all of the officer=s actions were
performed in his corporate capacity, the officer may be subjected to personal
jurisdiction and held liable in his individual capacity for those actions if
they were tortious or fraudulent.  Shapolsky v. Brewton, 56 S.W.3d 120,
133 (Tex. App.CHouston [14th Dist.] 2001, pet. denied), disapproved
of on other grounds, Michiana, 168 S.W.3d at 788.  Analogous
to the situation here, Cadle v. Graubart applied the fiduciary shield
doctrine and held that allegations of tortious activity against an individual
shareholder and director were insufficient to support jurisdiction over the
individual where the allegations and evidence were non-specific.  990 S.W.2d
469, 473 (Tex. App.CBeaumont 1999, no pet.).  A court looks to
the contacts and not to the merits of the case to determine jurisdiction.  Michiana,
168 S.W.3d at 790.  Personal jurisdiction turns on the contacts themselves, not
on whether the contacts were tortious.  Id. at 792.  As in Cadle,
this case=s record contains allegations of tortious behavior,
fraud, and conspiracy against Urban.  However, what is lacking in the record
are specific facts to show continuous and systematic individual contacts Urban
had with Texas.

  Mrs. Barker=s statements in
her first amended original petition and her response to Urban=s special
appearance lack the necessary description of specific contacts that can be
attributed to Urban individually.  These statements include numerous conclusory
allegations and nonspecific accusations, similar to the following examples.

! Urban was an unusually secretive and disingenuous executive, who
refused to provide basic financial and operating information to Barker.  

No evidence was
attached to show when Barker contacted Urban and was refused information. 
Urban=s brief denies the
allegations, but also states any information provided to Barker about TSI would
have come from the corporate headquarters in Colorado.

! Urban traveled to Pasadena, Texas to conduct business on behalf of
TSI every few months during the seven year period that TSI maintained an
office in Pasadena, Texas.[8]

Here, Mrs. Barker=s statement
supports Urban=s position that his travels were on behalf of the
company and not as an individual.

! Urban was a salaried employee of
TSI, responsible for hiring and firing of personnel, equipment purchases, and
supervision of sales staff.

It is
unclear whether Mrs. Barker contends Urban performed these duties, in Texas or
Colorado.  Regardless, this statement attributes any possible Texas connections
to Urban=s responsibilities
as an employee of TSI, and not in his individual capacity.  The record lacks
the necessary evidence of continuous and systematic contacts attributable to
Urban outside the fiduciary shield, to establish general jurisdiction over
Urban as an individual.








Having determined there are insufficient contacts between
Urban and Texas to support an exercise of either specific or general personal
jurisdiction over Urban, we need not consider the fairness requirement of due
process because A>the fairness prong
cannot compensate for or overcome the requirement of some minimum contacts with
the forum state.=@  Stuart v.
Spademan, 772 F.2d 1185, 1194 n.7 (5th Cir. 1985) (quoting Growden v. Ed
Bowlin & Assocs., Inc., 733 F.2d 1149, 1150-51 (5th Cir. 1984)).  Thus,
we reverse and render judgment dismissing the action for lack of personal
jurisdiction.

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

Judgment Reversed and Rendered and
Memorandum Opinion filed March 6, 2007.

Panel consists of Justices
Anderson, Hudson, and Guzman.









[1]  The findings of fact from the trial court are as
follows:

1.)  
Paulette Barker is the named executor for the Estate of Robert Barker,
deceased(collectively ABarker@).

2.)
Michael Urban (AUrban@) and Robert Barker
founded Thermal Solutions, Inc. (ATSI@).

3.)  
Barker owned 83,000 shares of TSI stock.

4.)   TSI
conducted business in Pasadena, Texas for seven years; from the time it was founded
in the fall of 1997 until several months following its acquisition by defendant
Team, Inc. in July 2004.

5.)  
Urban actively participated in the operation and management of TSI for the
entire seven years TSI was headquartered in Texas.

6.)  
Urban was an officer, director, and salaried executive of TSI.

7.)  
Urban was responsible for hiring and firing personnel, supervision of TSI=s sales staff, and purchase of company equipment.

8.)  
Urban managed and directed TSI=s day to day
operations.

9.)   In
his role as officer, director, and executive of TSI, Urban made no less than
thirty (30) business trips to Pasadena, Texas during the seven years that TSI
operated out of its Texas facility, including trips after Team Inc.=s July 2004 acquisition of TSI.

10.) Urban
was an unusually secretive and disingenuous executive who refused to provide
information to Barker regarding TSI=s
financial condition or its ongoing operations.

11.) 
Concern about how TSI was being run and the inability to obtain basic
information about TSI=s finances and operations, led to concerns by Barker
regarding potential personal liability for debts or actions of the company.

12.) Urban
repeatedly told Barker that he would frustrate any attempt to realize a fair
value for Barker=s TSI stock through a sale or merger of the company.

13.) Urban
insisted that the company would remain independent, even if that depressed the
stock price.

14.) Urban=s actions and representations made it impossible for
Barker to receive a fair price for his stock and forced Barker to sell his TSI
shares at an artificially depressed price to defendant Emmett J. Lescroart (ALescroart@).

15.) While
Barker was trying to sell his TSI stock, and in spite of Urban=s repeated claims that he would block any sale or
merger, Urban was actively negotiating to sell TSI.

16.) After
Lescroart purchased Barker=s TSI shares,
Urban sold TSI B without any material intervening business event B for three times what Barker had received for his
shares.

 





[2]  Mrs. Barker=s
affidavit state, in the pertinent part:

1) I am
the plaintiff in the above-referenced action.  I reside in Pasadena, Harris
County, Texas.  I have personal knowledge of the matters stated in this
affidavit and am competent to testify hereto, and swear under penalty of
perjury that the facts set out in this affidavit are true and correct.

2)
Defendant Michael Urban and my husband Robert Barker, now deceased, founded
Thermal Solutions, Inc. (TSI) in the fall of 1997.

3) The
initial business location of TSI was Pasadena, Texas.

4) TSI
conducted business in Pasadena, Texas for seven years from the time of its
inception until several months following its acquisition by Team, Inc. in July
2004.

5) Michael
Urban actively participated in the operations and management of TSI for seven years
from the time of its inception until several months following its acquisition
by Team, Inc. in July 2004.

6)
Notwithstanding his status as an officer and director of TSI, Urban was a
salaried employee of TSI, responsible for hiring and firing of personnel,
equipment purchases and supervision of sales staff.

7) Michael
Urban continued to participate in the operations and management of TSI
following the acquisition of TSI by Team, Inc. in July 200[4].

8) Michael
Urban made no fewer than 30 business trips to Pasadena, Texas during the seven
year period of time that TSI operated out of its Pasadena, Texas facility,
including trips subsequent to acquisition of TSI by Team, Inc.

9) TSI
vacated its Pasadena, Texas facility in October or November 2004.

10) Michael
Urban has continued to travel to Texas for to provide services to TSI and Team,
Inc. since the relocation of TSI by Team, Inc.

11)
Michael Urban continued to travel to Texas until sometime in mid 2005.

12)
Michael Urban has traveled to Texas to provide services to TSI and Team, Inc.
every few months for no less than nine consecutive years, ending within the
past year.





[3]  The Texas Civil Practices and Remedies Code
provides: 

In
addition to other acts that may constitute doing business, a nonresident does
business in this state if the nonresident:

   (1)
contracts by mail or otherwise with a Texas resident and either party is to
perform the contract in whole or in part in this state;

   (2)
commits a tort in whole or in part in this state; or

   (3)
recruits Texas residents, directly or through an intermediary in this state,
for employment inside or outside this state.

Tex. Civ. Prac. & Rem.
Code Ann. ' 17.042 





[4]  Although Urban was not a party to the contract, we
note his brief contends the contract contains a choice of law clause indicating
Colorado law applies to the contract and any controversies arising from the
contract.  Mrs. Barker=s petition and briefs are silent on this point.  The
Supreme Court has held that choice-of-law provisions should not be ignored in
considering whether a defendant has Apurposefully
invoked the benefits and protections of a State=s laws.@  Burger King, 471 U.S. at 482.  The
choice-of-law clause is some evidence the parties did not expect to be in a
Texas court dealing with any controversies concerning the contract.





[5]  Civil conspiracy is considered a derivative tort
because a defendant=s liability depends upon participation in some
underlying tort for which the plaintiff attempts to hold the defendant liable. 
Tilton v. Marshall, 925 S.W.2d 672, 681 (Tex. 1996).  A plaintiff must
prove the defendant was liable for some underlying tort in order to prevail on
a civil conspiracy claim.  Hunt v. Baldwin, 68 S.W.3d 117,133 (Tex. App.CHouston [14th Dist.] 2001, no pet.).  The conspiracy
must consist of acts which would have been actionable against the conspirators
individually.  Int=l.
Banker=s Life Ins. Co. v. Holloway, 368 S.W.2d 567, 581 (Tex. 1963).





[6]  The Texas Supreme Court has expressly rejected
jurisdiction based solely upon the effects or consequences of an alleged
conspiracy in the forum state, considering instead the defendant=s conduct and connection with the forum to be
critical.  Michiana, 168 S.W.3d at 789.





[7]  The Texas Supreme Court has not explicitly adopted
the fiduciary shield doctrine, but intermediate appellate courts have applied
it to defeat general jurisdiction.  Brown v. General Brick Sales Co., Inc.,
39 S.W.3d 291, 298B99 (Tex. App.CFort
Worth 2001, no pet.) (citing Garner v. Furmanite Australia Pty., Ltd., 966 S.W.2d 798, 803 (Tex. App.CHouston [1st Dist.] 1998, pet.
denied); J & J Marine, Inc. v. Le,
982 S.W.2d 918, 927 (Tex. App.CCorpus Christi
1998, no pet.); MacMorran v. Wood, 960 S.W.2d 891, 898 (Tex. App.CEl Paso 1997, pet. denied); Vosko, 909 S.W.2d
at 99; Clark v. Noyes, 871 S.W.2d 508, 518 (Tex. App.CDallas 1994, no writ)).





[8]   Emphasis added.