Michael H. VOSKO, Appellant,

v.

The CHASE MANHATTAN
BANK, N.A., Appellee.

No. 14–93–00494–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 24, 1995.

Rehearing Overruled Nov. 22, 1995.

Carol Stephenson, Kimberly A. Satz, Houston, for appellant.

Mark C. Harwell, Kenneth M. Morris, David A. Furlow, Houston, for appellee.

Before MURPHY, C.J., and LEE and EDELMAN, JJ.

## OPINION

EDELMAN, Justice.

Michael Vosko ("Michael") appeals a judgment in favor of The Chase Manhattan Bank ("Chase") on several grounds, including lack of personal jurisdiction. Because we find that personal jurisdiction was lacking, we reverse and render judgment dismissing the action.

In 1984, Michael's father, Irwin L. "Smitty" Vosko ("Smitty"), borrowed money from Chase's branch in the Bahamas, where he lived. Chase eventually sued for and received a summary judgment for over $5.5 million against Smitty in federal court in New York on January 26, 1990 in connection with that debt (the "federal court judgment"). That judgment was not appealed.

Smitty formerly lived in a house in the Bahamas, referred to as the Findan House. The title to this house was held in the name of Findan Properties, Ltd., a Bahamian corporation ("Findan"). Findan was a wholly owned subsidiary of I.L. Vosko & Associates, Ltd. ("Associates").[1] On January 19, 1990, just before entry of the federal court judgment, the stock of Findan was transferred by Associates to Young Holdings, Ltd., ("Young"), a Bahamian corporation wholly owned by a Bahamian charitable trust known as the Norfolk Trust or Norfolk Settlement (the "Trust").

Smitty continued to live in the Findan House after the transfer until April of 1990, when it was sold to a third party for $3.5 million. After the $1.3 million mortgage balance was paid, net proceeds of the sale were $2.2 million. Thereafter, $900,000 was paid to buy a new home for Smitty, the title to which was held in the name of Denby Holdings, Ltd. ("Denby"), a Bahamian corporation also wholly owned by Young. Although the transfer of funds was not traced in the record, Michael testified, and the trial court found, that proceeds from the sale of the Findan house were used to purchase this house.

Petroder (USA) Ltd. ("Petroder") is a Delaware corporation doing business in Texas. Michael was President of Petroder during the events in issue in this case. Petroder is wholly owned by Bassett Investments, Ltd., ("Bassett"), a Bahamian corporation owned by the Trust. Michael owned Bassett's shares until 1975 when he transferred them to the Trust. Michael was a director of Bassett, Young and Petroder.

Chase sued Michael under the Texas Fraudulent Transfer Act claiming that Michael, as the alter ego of several corporations, received assets transferred from Smitty with the intent to defraud Chase, a judgment creditor of Smitty. See Tex.Bus. & Com.Code Ann. §§ 24.005(a)(1), 24.006(a), 24.006(b) (Vernon 1987 & Supp.1995). Petroder and Bassett were also defendants in the case. Michael, a Canadian citizen and resident of England, and Bassett filed a special appearance. See Tex.R.Civ.P. 120a. After a hearing, the trial court entered an order stating that both were amenable to the court's jurisdiction, and overruling the special appearance, without specifying the basis therefor. The claims against Petroder were later severed after it filed bankruptcy.

The case was tried to the court and judgment was entered against Michael, personally, for $2.2 million. A take nothing judgment

---

1. The record does not reflect the place of origin of Associates; however, it is not alleged to be a Texas corporation or doing business in Texas.

was entered in favor of Bassett from which Chase has not appealed. In its findings of fact and conclusions of law, the trial court concluded that: Young and the Trust were the alter egos of Michael; Findan was the alter ego of Smitty; and the Findan House was fraudulently transferred to Michael (presumably by Smitty), resulting in $2.2 million of equity value being realized by Michael. Neither the judgment nor the findings of fact or conclusions of law addressed the issue of personal jurisdiction over Michael.

In Michael's first point of error, he complains that the trial court erred in denying his special appearance because the court had no personal jurisdiction over him.

■■■ A Texas court may exercise jurisdiction over a nonresident if it is authorized by the Texas long-arm statute,[2] and if it is consistent with federal and state constitutional due process guarantees. *Schlobohm v. Schapiro,* 784 S.W.2d 355, 356 (Tex.1990). The Texas long-arm statute authorizes the exercise of jurisdiction over nonresidents "doing business" in Texas, as defined in that provision. TEX.CIV.PRAC. & REM.CODE ANN. § 17.042 (Vernon 1986).[3] In addition to the acts specified, the long-arm statute provides that other, unspecified acts by a non-resident may also constitute "doing business." Moreover, the broad language of this "doing business" requirement permits the statute to reach as far as federal constitutional requirements of due process will allow. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex. 1991).

■ Since the "doing business" concept extends as far as due process will allow, it follows that any activity or contact which satisfies due process also constitutes doing business, and that any activity or contact which does not satisfy due process does not constitute doing business. As a practical matter, therefore, we need not analyze the "doing business" requirement apart from the due process requirement since the scope of each is coextensive.

The two prongs of the due process requirement have recently been reiterated by the Texas Supreme Court as follows:

[1] In order for a court's assertion of jurisdiction over a nonresident defendant to comport with due process, the defendant must have purposefully established minimum contacts with the forum state such that it could reasonably anticipate being sued in the courts of the state. [2] The exercise of jurisdiction must also comport with fair play and substantial justice.

*Nat'l Indus. Sand Ass'n v. Gibson,* 897 S.W.2d 769, 772 (Tex.1995) (citations omitted).

■■■ The minimum contacts requirement is satisfied if either general or specific jurisdiction exists. General jurisdiction is present where the defendant has had continuous and systematic contacts with Texas, even if the cause of action did not arise from the defendant's purposeful conduct in the state. *Id.*

■ For a trial court to have specific jurisdiction, the plaintiff's cause of action must arise out of or relate to the nonresident defendant's contacts with Texas. *Id.* The defendant's activities must have been "purposefully directed" to the forum, and the litigation must result from injuries arising from or relating to those activities. *Guardian Royal,* 815 S.W.2d at 228.

■■■ To invoke the fair play and substantial justice prong of due process, a nonresident defendant must present a compelling case that the exercise of jurisdiction would be unreasonable. *In re S.A.V.,* 837

---

2. TEX.CIV.PRAC. & REM.CODE ANN. §§ 17.041—.093 (Vernon 1986 & Supp.1995).

3. Section 17.042 provides:
   In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:
   (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
   (2) commits a tort in whole or in part in this state; or
   (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

S.W.2d 80, 85 (Tex.1992).[4] However, once minimum contacts have been established, the exercise of jurisdiction will rarely fail to comport with fair play and substantial justice. *Id.* at 86.

A defendant asserting lack of personal jurisdiction by special appearance has the burden of negating all bases of jurisdiction. *Gibson,* 897 S.W.2d at 772. However, if the plaintiff does not allege that the defendant performed a specific act in Texas, the defendant's evidence that he is a nonresident is enough to carry his burden of proof. *Siskind v. Villa Found. for Educ., Inc.,* 642 S.W.2d 434, 437–38 (Tex.1982).

On appeal, the scope of review of a ruling on a special appearance includes all evidence in the record. *Carbonit Houston, Inc. v. Exchange Bank,* 628 S.W.2d 826, 829 (Tex.Civ.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). Therefore, in reviewing the assertion of personal jurisdiction over Michael, we will consider the evidence adduced at trial as well as the special appearance hearing.

We first address whether Michael's contacts with Texas were continuous and systematic enough to afford general jurisdiction. The facts relevant to this issue are that: Michael is a citizen of Canada; he owned a home and resided in Houston from July of 1982 until September of 1987, and has since resided in England; he held a Texas driver's license until 1985 or 1987; he held an immigration permit to live and work in Houston through January of 1986; he was an officer and director of Bassett while he resided in Texas; Michael was an officer and director of Petroder until at least March of 1990; Petroder's only place of business was Houston; after moving his residence from Texas, Michael returned to the State to conduct Petroder business on one occasion in 1988 and one in 1989; and, since that time, Michael has personally had no business activity in Texas, owned no property in Texas, and has had no employees, servants or agents in Texas.

Notably, after 1987, Michael's only contacts with the State were to conduct Petroder business. Thus, his personal contacts with the State ended roughly three years before Chase's cause of action arose. Moreover, his former residence and contacts in Texas did not avail him of the benefits and protections of the State after that residency was relinquished.[5]

Similarly, jurisdiction over an individual generally cannot be based on jurisdiction over a corporation with which he is associated unless the corporation is the alter ego of the individual. *Clark v. Noyes,* 871 S.W.2d 508, 509 (Tex.App.—Dallas 1994, no writ); *Leon Ltd. v. Albuquerque Commons Partnership,* 862 S.W.2d 693, 708 (Tex. App.—El Paso 1993, no writ).[6] Therefore, although Texas clearly had general jurisdiction over Petroder, that did not create jurisdiction over Michael since Petroder was not alleged or proved to be Michael's alter ego. Nor was jurisdiction over Michael conferred by his being found to be the alter ego of the Trust or Young since jurisdiction was not

---

4. The factors to be considered include: (1) the burden on the defendant; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; (5) the shared interest of the states in furthering fundamental substantive social policies. *In re S.A.V.,* 837 S.W.2d 80, 86 (Tex.1992).

5. *Compare Luker v. Luker,* 776 S.W.2d 624, 625–26 (Tex.App.—Texarkana 1989, writ denied) (where cause of action arose outside State five months after defendant ceased to be a resident, minimum contacts did not exist even though defendant continued to hold Texas drivers license, travel to State three or four times a year and finance automobile in Texas) *and Collins v.*

*Mize,* 447 S.W.2d 674, 675–76 (Tex.1969) (where cause of action arose from transaction consummated in Texas while defendant was a resident, sufficient minimum contacts existed even though defendant moved to another state before suit was commenced).

6. *See also Stuart v. Spademan,* 772 F.2d 1185, 1197 (5th Cir.1985); *Siskind v. Villa Foundation for Education, Inc.,* 642 S.W.2d 434, 438 (Tex. 1982) (absent an allegation of an act in the State or with foreseeable consequences therein, nonresident employee of foreign corporation cannot be sued because his employer solicits business here); *Ross F. Meriwether & Assoc., Inc.,* 686 S.W.2d 730, 731 (Tex.App.—San Antonio 1985, no writ) (when nonresident agent negotiates contract in Texas for principal, only principal, not agent, does business in State).

established with regard to either of those entities. Under these circumstances, we are unable to find that Michael had sufficiently continuous and systematic contacts with Texas to establish general jurisdiction over him.

■ We therefore consider whether Chase's claims arose out of Michael's contacts with Texas or activities by him which were purposefully directed to the State, so as to confer specific jurisdiction. *Guardian Royal,* 815 S.W.2d at 228. Chase alleged that Michael, Petroder and Bassett were involved in a civil conspiracy to defraud Chase.

■ A civil conspiracy is a combination by two or more persons to accomplish either an unlawful purpose or a lawful purpose by unlawful means. *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex.1983). A civil conspiracy between a resident and nonresident defendant has been recognized by some courts as an independent basis for exercising personal jurisdiction over the nonresident. *Gibson,* 897 S.W.2d at 773; *see also Cherokee Labs., Inc. v. Rotary Drilling Servs., Inc.,* 383 F.2d 97, 103 (5th Cir.1967), *cert. denied,* 390 U.S. 904, 88 S.Ct. 816, 19 L.Ed.2d 870 (1968) (alleged civil conspiracy was within scope of Texas long-arm statute; due process not addressed). However, the Texas Supreme Court has expressly rejected this approach, holding instead that jurisdiction may be exercised only where a nonresident defendant has purposefully established sufficient minimum contacts to satisfy due process. *Gibson,* 897 S.W.2d at 773.

■ In this case, the conspiracy was alleged to consist of investing and holding property, conducting business transactions and obtaining financing in the name of Petro-

der for Smitty's benefit.[7] However, we are unable to find an allegation or evidence of a specific act by Michael in Texas in furtherance of this conspiracy. In fact, the trial court made no findings of fact or conclusions of law on the alleged conspiracy,[8] and we are aware of no evidence which personally links Michael to it at all.

Chase refers to its exhibits 3–5 as evidence that Michael and Smitty used Petroder's bank accounts in Houston to conceal Smitty's assets in the United States. These exhibits were copies of fax transmittals concerning internal audits of Smitty's joint ventures. They were sent by a representative of Smitty in the Bahamas to Smitty and a financial officer and director of Petroder in London. While these exhibits may indicate use of Petroder's accounts by Smitty, they do not show a connection to Michael.

In addition to the alleged conspiracy, Chase claimed that Michael took part in various fraudulent transfers. The conveyance involving the Findan House was found by the trial court to be such a transfer. In addition, Chase alleged that funds from the sale of stock in the Eighty–Eight Corporation, another Bahamian corporation in which Young was involved with Smitty, were fraudulently transferred to Michael. In another alleged fraudulent transfer, Michael received from Smitty shares of another Bahamian corporation which bought out three pipeline joint ventures in which Smitty's interest had been held in the name of Petroder. Petroder also allegedly guaranteed the loan Smitty received from a Houston bank to purchase those interests.

Again, despite these contentions, we have found no allegations or evidence that Michael

---

7. As a matter of law, a corporation cannot conspire with itself, no matter how many of its agents participate in the complained of action. *Wilhite v. H.E. Butt Co.,* 812 S.W.2d 1, 5 (Tex.App.—Corpus Christi 1991, no writ); *Christopher v. General Computer Sys., Inc.,* 560 S.W.2d 698, 709 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.). This is because the acts of a corporation's agents are deemed to be the acts of the corporation itself. *Fojtik v. First Nat'l Bank,* 752 S.W.2d 669, 673 (Tex.App.—Corpus Christi 1988), *writ denied per curiam,* 775 S.W.2d 632 (Tex.1989) (stated rule not applicable where corporate agent acts in independent capacity). Nor can a parent and subsidiary corporation, or their employees or agents acting within the scope of their employ-

ment, conspire. *Atlantic Richfield Co. v. Misty Prod., Inc.,* 820 S.W.2d 414, 420–21 (Tex.App.—Houston [14th Dist.] 1991, writ denied). Thus, there is some question whether Michael could have conspired with Petroder or Bassett while acting on their behalf.

8. Although claims for both civil conspiracy and fraudulent transfer were alleged against Michael, liability was found only on the latter. We know of no authority which addresses whether, in the absence of general jurisdiction, specific jurisdiction can arise from claims on which liability is not found, where it is lacking with respect to claims on which liability is found.

engaged in his individual capacity in any specific acts in, or directed to, Texas in furtherance of these alleged fraudulent transfers. Only the last mentioned transaction had any connection to Texas through Petroder, and Chase conceded in its petition that Michael had nothing to do with these joint ventures. Moreover, it has not been shown that any of the allegedly fraudulent acts even took place in Texas. Accordingly, we are also without an adequate basis to find specific jurisdiction over Michael.

In the absence of general or specific jurisdiction, the trial court's assertion of personal jurisdiction over Michael did not comport with due process. Therefore, we sustain point of error one, reverse the judgment of the trial court, and render judgment dismissing the action.