Reversed and Remanded and Memorandum Opinion filed February 13, 2007








Reversed and
Remanded and Memorandum
Opinion filed February 13, 2007.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00125-CV

____________

 

PAULETTE BARKER, AS NAMED EXECUTOR
FOR THE ESTATE OF ROBERT BARKER, AND PAULETTE BARKER, INDIVIDUALLY, Appellants

 

V.

 

EMMETT J. LESCROART, Appellee

 



 

On Appeal from the Probate
Court No. 1

Harris County, Texas

Trial Court Cause No. 355868-402

 



 

M E M O R A N D U M   O P I N I O N








In this interlocutory appeal,[1]
appellant Paulette Barker[2]
appeals the trial court=s order granting appellee Emmett J.
Lescroart=s special appearance.  In a single issue, appellant
argues the trial court erred when it granted appellee=s special
appearance as appellee=s contacts with Texas are sufficient to
give the trial court personal jurisdiction over appellee. As we determine
appellee=s contacts are
sufficient to establish general jurisdiction, we reverse the trial court=s order and remand
this matter for further proceedings in accordance with this opinion.

Factual and Procedural Background

In November 2001, appellee, a resident of New Jersey,
joined the board of directors of  Thermal Solutions, Inc. (ATSI@), a Colorado
corporation. Since 1996, appellee has acted as an independent private investor
managing his personal investments. Robert and Paulette Barker owned 83,000
shares of TSI stock.  At all times relevant to this litigation, the Barkers
resided in Harris County, Texas.  In June 2003, appellee contacted Mr. Barker
in Harris County, Texas, by telephone, to solicit the purchase of the Barker=s TSI stock. In a
series of at least five telephone calls, all initiated by appellee, appellee
negotiated the purchase of all 83,000 shares of the Barkers= TSI stock for
$7.00 per share.  After TSI=s shareholders declined to exercise their
right of first refusal, the paperwork documenting the deal between appellee and
the Barkers was prepared by TSI in Colorado and the transaction was completed
on August 5, 2003 when TSI issued a new stock certificate to appellee.

In December 2003, only four months after the sale of the
Barker stock was completed, appellee opened negotiations with Team, Inc. (ATeam@), a Texas
corporation located in Alvin, Texas, about purchasing appellee=s TSI stock.
Eventually, appellee and Team reached an agreement and the sale of appellee=s TSI stock to
Team closed in April 2004.  Team paid for the TSI stock with both cash and
stock. As part of the stock purchase agreement, appellee agreed not to compete
with Team for a period of five years.  In addition, all parties to the stock
purchase agreement submitted to the jurisdiction of any federal or state court
sitting in either Denver County, Colorado or Harris County, Texas in any action
or proceeding arising out of or related to the agreement.








Appellee is not just an owner of Team stock. On July 30,
2004, appellee entered into a consulting agreement with Team under which he
functions as an independent contractor assisting Team with its heat treatment
business located in Alvin, Texas.  As payment for his consulting services
appellee receives $900 per day.  In addition, as part of the compensation for
his consulting services, appellee was eligible for and received an option to
purchase 20,000 additional shares of Team stock. 

In September 2004, appellee was elected to Team=s board of
directors.  As a director, appellee is paid an annual fee of $30,000.  This is
paid in both cash ($20,000) and Team common stock ($10,000).  In addition,
appellee received upon his appointment as a director, an automatic grant of an
option to purchase 15,000 additional shares of Team stock.

Sometime after the Barkers sold their TSI stock to
appellee, Mr. Barker died.  The exact date is not clear from the appellate
record.  On July 13, 2005, alleging numerous causes of action, including fraud,
breach of fiduciary duty, and fraud in the sale or purchase of securities,
appellant filed suit against appellee, TSI, Team and other defendants. 
Appellee filed a special appearance objecting to the trial court asserting
personal jurisdiction over him, which the trial court granted.  This
interlocutory appeal followed.

Discussion

A.      Standard
of Review

The plaintiff bears the initial burden of pleading
sufficient allegations to bring a nonresident defendant within the personal
jurisdiction of a Texas court.  BMC Software Belgium, N.V. v. Marchand,
83 S.W.3d 789, 793 (Tex. 2002).  A defendant challenging the court=s assertion of
personal jurisdiction must negate all jurisdictional bases. Id.








Whether a court has personal jurisdiction over a defendant
is a question of law, which we review de novo. Id. at 794. 
Frequently when deciding a special appearance, a trial court must resolve
questions of fact before deciding the jurisdiction question.  Id.  When
a trial court does not issue findings of fact and conclusions of law with its
special appearance ruling, all facts necessary to support the judgment and
supported by the evidence are implied. Id. at 795.  When the appellate
record includes the reporter=s and clerk=s records these
implied findings are not conclusive and may be challenged for legal and factual
sufficiency in the appropriate appellate court.  Id.  However, when the
special appearance is based upon undisputed and established facts, as it is
here, the reviewing court conducts a de novo review of the trial court=s order granting
or denying a special appearance. C-Loc Retention Systems, Inc. v. Hendrix,
993 S.W.2d 473, 476 (Tex. App.CHouston [14th Dist.] 1999, no pet.).

B.      In
Personam Jurisdiction

The Texas long-arm statute governs Texas courts= exercise of
jurisdiction over nonresident defendants. See Tex. Civ. Prac. & Rem. Code Ann. ' 17.041B045 (Vernon 1997
& Supp. 2006).  That statute permits Texas courts to exercise
jurisdiction over nonresident defendants doing business in the state of Texas. Tex. Civ. Prac. & Rem. Code Ann. ' 17.042 (Vernon
1997). The broad language of section 17.042 extends Texas courts= personal
jurisdiction as far as the federal constitutional requirements of due process
will permit. BMC Software, 83 S.W.3d at 795.  Because the long-arm
statute=s concept of Adoing business@ extends as far as
federal due process will allow, any activity or contact which satisfies due
process constitutes doing business, and any contact which does not satisfy due
process does not constitute doing business, and we need not analyze the Adoing business@ requirement
separate from the due process requirement. Vosko v. Chase Manhattan Bank,
N.A., 909 S.W.2d 95, 98 (Tex. App.CHouston [14th Dist.]
1995, writ denied).  To determine whether the assertion of personal
jurisdiction is consistent with the requirements of due process, we rely on
precedent from the United States Supreme Court and other federal courts, as
well as Texas decisions. BMC Software, 83 S.W.3d at 795.








Personal jurisdiction over nonresident defendants is
constitutional when two conditions are met: (1) the defendant has established
minimum contacts with the forum state, and (2) the exercise of personal jurisdiction
comports with traditional notions of fair play and substantial justice.  Id.
(citing Int=l Shoe Co. v. Washington, 326 U.S. 310,
316, 66 S.Ct. 154,  90 L.Ed. 95 (1945)).  The purpose of the minimum contacts
analysis is to protect the defendant from being haled into court when its
relationship with Texas is too attenuated to support jurisdiction.  Am. Type
Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 806 (Tex. 2002) (citing
Schlobom v. Schapiro, 784 S.W.2d 355, 357 (Tex. 1990)).  The minimum
contacts analysis requires that a defendant Apurposefully avail@ himself of the
privilege of conducting activities within the state of Texas, thus invoking the
benefits and protections of Texas law. Id. (citing Burger King Corp.
v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). 
Where the defendant has deliberately created continuing obligations between
himself and residents of the forum state, he manifestly has availed himself of
the privilege of conducting business there. Burger King, 471 U.S. at
475, 105 S.Ct. at 2184.

A defendant is subject to personal jurisdiction based on
his own purposeful activity and not on the unilateral acts of a third party. Michiana
Easy Livin= Country, Inc. v. Holten, 168 S.W.3d 777,
785 (Tex. 2005).  Therefore, it is only the defendant=s contacts with
the forum that count when determining whether he has purposefully availed
himself of the privilege of conducting business in the state of Texas.  Id.  In
addition, the acts relied upon must be Apurposeful@ rather than
fortuitous.  Id. Also, a defendant must seek some benefit, advantage, or
profit by Aavailing@ himself of the
jurisdiction.  Id.  It is the quality and the nature of the defendant=s contacts, rather
than the quantity, that is important to the minimum contacts analysis.  Am.
Type Culture, 83 S.W.3d at 806.  Random, isolated, or fortuitous contacts
with the forum state are insufficient to confer jurisdiction. Michiana,
168 S.W.3d at 785. 

Personal jurisdiction exists if the nonresident defendant=s minimum contacts
give rise to either general or specific jurisdiction.  BMC Software, 83
S.W.3d at 795B96. General jurisdiction is present when the defendant=s contacts in a
forum are continuous and systematic so that the forum may exercise personal
jurisdiction over the defendant even if the cause of action did not arise from
or relate to activities conducted within the forum state. Id. at 796. 
Specific jurisdiction is established if the cause of action arises from the
defendant=s contacts with the forum.  Id.  Appellant
argues appellee=s contacts with Texas satisfy the
requirements for both general and specific jurisdiction.  Because we determine
appellee meets the requirements for the assertion of general jurisdiction we
need not address appellant=s specific jurisdiction argument.








C.      Minimum
Contacts with Texas

General jurisdiction may be exercised over a nonresident
defendant with continuous and systematic contacts with this state.  Guardian
Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223,
228 (Tex. 1991).  All contacts made up to the time suit is filed are relevant
to the general jurisdiction inquiry. Am. Type Culture, 83 S.W.3d at 804,
807B08; Nguyen v.
Desai, 132 S.W.3d 115, 118 (Tex. App.CHouston [14th
Dist.] 2004, no pet.).  In support of her general jurisdiction argument, Barker
cites three categories of contacts by appellee with Texas: (1) appellee=s telephone
negotiations for and purchase of the Barkers= TSI stock; (2)
appellee=s service on Team=s board of
directors; and (3) appellee=s agreement to provide consulting services
to Team.  For general jurisdiction purposes, we do not view each contact in
isolation.  All contacts must be carefully investigated, compiled, sorted, and
analyzed for proof of a pattern of continuing and systematic activity. Am.
Type Culture, 83 S.W.3d at 809.  What constitutes continuous and systematic
contacts can only be decided on a case-by-case basis. Id. at 810.

1.       Appellee=s Telephone Calls
to Texas

The record is undisputed that appellee initiated all
contact with Mr. Barker regarding the sale of the Barkers= TSI stock.  Thus,
when considering the series of at least five telephone calls made by appellee
to Mr. Barker, only the defendant=s contacts are
being considered.  In addition, appellee=s contacts were
not random, isolated, or fortuitous, but instead were purposeful as appellee, a
private investor who spends much of his time managing his investment portfolio,
initiated each of the calls to Mr. Barker in Texas as part of  appellee=s effort to
acquire the Barkers= 83,000 shares of TSI stock.  Finally,
appellee was seeking some benefit, advantage, or profit through these telephone
calls to Mr. Barker in Texas: the acquisition of  83,000 shares of TSI stock.

2.       Appellee=s Service on Team=s Board of
Directors








Barker asserts appellee=s service on Team=s board of
directors should be considered when evaluating whether appellee has established
a pattern of continuing and systematic contacts with Texas. In response,
appellee contends his service on Team=s board of
directors must be excluded from consideration of the personal jurisdiction
issue as a result of the fiduciary shield doctrine.  We agree with Barker that
appellee=s service as a
member of Team=s board of directors should be considered when
evaluating whether appellee has established a pattern of continuing and
systematic contacts with Texas.

Initially, we note the so-called fiduciary shield doctrine
has not been adopted by the Texas Supreme Court. Wright v. Sage Eng=g, Inc., 137 S.W.3d 238,
250 n.9 (Tex. App.CHouston [1st Dist.] 2004, pet. denied). 
In Vosko, we applied an aspect of the doctrine, holding that personal
jurisdiction over an individual may not be based on jurisdiction over a
corporation with which an individual is associated unless the corporation is
the alter ego of the individual.  Vosko, 909 S.W.2d at 99. Barker, by
asserting we should consider appellee=s service as a
member of Team=s board of directors when determining the personal
jurisdiction issue, is not seeking to impose Team=s contacts on
appellee nor is she asserting appellee is the alter ego of Team.  Therefore,
the fiduciary shield doctrine, as applied in Vosko, simply does not
apply.








In Calder v. Jones, the Supreme Court stated that,
although individuals= contacts with a forum are not to be
analyzed based on their employer=s activities in
that forum, Atheir status as employees does not somehow insulate
them from jurisdiction.@ 465 U.S. 783, 790, 104 S.Ct. 1482, 1487,
79 L.Ed.2d 804 (1984) . AThere is no blanket protection from jurisdiction
simply because a defendant=s alleged acts were done in a corporate
capacity.@ SITQ E.U., Inc. v. Reata Rests., Inc., 111
S.W.3d 638, 651 (Tex. App.CFort Worth 2003, pet. denied). Each
defendant=s contacts with the forum state must be assessed on an
individual basis. Calder, 465 U.S. at 790, 104 S.Ct. at 1487.  To
fulfill his duties as a director, appellee must travel to Texas multiple times
each year to attend the meetings of the board.  When considering appellee=s service on Team=s board of
directors, only his contacts are being considered. In addition, appellee=s contacts with
Texas as a result of his board service were not random, isolated, or
fortuitous, but instead were purposeful as appellee chose to accept the
position on the board of director=s for a Texas
corporation.  Finally, appellee was seeking some benefit, advantage, or profit
through his service on the board of a Texas corporation as he is compensated,
in the form of cash and stock, for each year he serves. Accordingly, we hold
that appellee=s service as a member of Team=s board of
directors should be considered when evaluating whether appellee has established
a pattern of continuing and systematic contacts with Texas.

3.       Appellee=s Consulting
Agreement

Barker argues appellee=s consulting
services agreement with Team should also be considered when evaluating whether
appellee has established a pattern of continuing and systematic contacts with
Texas.  Appellee does not address this issue.  In fact, appellee, stating that
his only contacts with Texas are a few phone calls to Mr. Barker, does not
mention this consulting services agreement anywhere in his brief.  For the same
reasons stated under section C(2) above, we hold that appellee=s consulting
services agreement with Team, which again, requires that he travel to Texas in
order to carry out his contractual duties, should be considered when evaluating
whether appellee has established a pattern of continuing and systematic
contacts with Texas.

4.       Pattern
of Continuing and Systematic Texas Contacts

The record demonstrates that appellee=s contacts with
Texas have been increasing in number and quality since his initial telephone
contact with Mr. Barker in June 2003. Since that telephone call, appellee has
(1) purchased a significant amount of stock from Texas residents; (2) become a
director of a Texas corporation; and most significantly, (3) signed an
agreement to provide consulting services to a Texas corporation for a fee of
$900 per day.  As appellee has deliberately created continuing obligations
between himself and residents of Texas, he has manifestly availed himself of
the privilege of conducting business here. Burger King, 471 U.S. at 475,
105 S.Ct. at 2184.  Accordingly, after compiling, sorting, and analyzing
appellee=s Texas contacts
for proof of a pattern of continuing and systematic activity, we hold that
appellee has sufficient minimum contacts with Texas to anticipate being haled
into a Texas court.  Am. Type Culture, 83 S.W.3d at 809.








D.      Fair Play
and Substantial Justice

Having concluded that appellee has sufficient contacts with
Texas to support general jurisdiction, we next consider whether the exercise of
jurisdiction over him offends the traditional notions of fair play and
substantial justice.  D. H. Blair Inv. Banking Corp. v. Reardon, 97
S.W.3d 269, 278 (Tex. App.CHouston [14th Dist.] 2002, pet. dism=d w.o.j.) (citing Guardian
Royal, 815 S.W.2d at 231).  The following factors, when appropriate, should
be considered: (1) the burden on the defendant; (2) the interests of the forum
state in adjudicating the dispute; (3) the plaintiff=s interest in obtaining
convenient and effective relief; (4) the interstate judicial system=s interest in
obtaining the most efficient resolution of controversies; and (5) the shared
interest of the several states in furthering fundamental substantive social
policies.  Id.  Only in rare cases will the exercise of jurisdiction not
comport with fair play and substantial justice when, as here, the nonresident
defendant has purposefully established minimum contacts with the forum. Id. 
The burden is on the defendant to present a compelling case that the presence
of some other considerations would render jurisdiction unreasonable. Guardian
Royal, 815 S.W.2d at 231. 

Appellee claims the exercise of jurisdiction over him is
inconsistent with traditional notions of fair play and substantial justice
because: (1) having to defend the suit in Texas would be excessively burdensome
and inconvenient to appellee; (2) Texas has no interest in adjudicating the
claims of this lawsuit; (3) the plaintiff=s interest in
convenient and effective relief would be served by dismissing this suit and
allowing it to be re-filed in Colorado; (4) the interstate judicial system=s interest in efficient
resolution of controversies would likewise be served by dismissing this suit,
allowing it to be re-filed in Colorado; and (5) the states= shared interest
in furthering fundamental social policies would also be served by dismissing
appellant=s suit.  We disagree.













As to the first factor, the burden on the defendant,
nothing in the record indicates that litigation in Texas would be excessively
burdensome or inconvenient to appellee.  The record reflects regular and
continuing contacts by appellee with Texas. In addition, the record shows that
appellee agreed to Texas jurisdiction for any dispute growing out of the TSI
stock sale to Team.  This agreement serves as some evidence that having to
litigate this dispute in Texas does not create a burden so great as to be
inconsistent with the constitutional guarantees of due process.  Finally, while
litigation away from home undoubtedly creates some hardship for any defendant,
there is no legal requirement that this hardship must be borne instead by the
plaintiff whenever the defendant is not found in the state of the plaintiff=s residence. Wright,
137 S.W.3d at 253B54 (citing General Elec. Co. v. Brown
& Ross Int=l Distribs., Inc., 804 S.W.2d 527,
531B32 (Tex. App.CHouston [1st
Dist.] 1990, writ denied). Regarding the second and third factors, we find it
incredible for appellee to suggest that Texas has no interest in adjudicating
this dispute and that the interest of the Texas plaintiff would be served by
dismissing this suit.  Texas courts have an interest in providing a forum for
resolving disputes involving its citizens.  D. H. Blair Inv. Banking, 97
S.W.3d at 278. Texas is certainly a convenient forum for the Texas plaintiff. 
In addition, litigation in Texas will provide all the parties, not just
appellant and appellee, the benefits and protections of our laws. Lewis v.
Indian Springs Land Corp., 175 S.W.3d 906, 919 (Tex. App.CDallas 2005, no
pet.).  The fourth factor, the interstate judicial system=s interest in
obtaining the most efficient resolution of the controversy, will likewise be
served by litigating this matter in Texas, where the matter is already pending
and all other interested parties are currently before the trial court.[3]
 Id.  The fifth factor, the shared interest of other states in
furthering fundamental substantive social policies, can be implemented by Texas
courts as effectively as the courts of Colorado or New Jersey.  Id.  In
addition, any potential clash of the forum=s law with the
fundamental substantive social policies of another state may be accommodated
through an application of the forum=s choice of law
rules.  Brown v. Gen. Brick Sales Co., Inc., 39 S.W.3d 291, 297 (Tex.
App.CFort Worth 2001,
no pet.).  As appellee, the nonresident defendant, has not presented a
compelling case that the presence of some other considerations would render
jurisdiction unreasonable, we find that the exercise of general jurisdiction
over appellee by a Texas court does not offend traditional notions of fair play
and substantial justice.

We sustain appellant=s single issue on
appeal.

Conclusion

Having sustained appellant=s only issue, we
reverse the trial court=s order granting appellee=s special
appearance and remand this matter to the trial court for further proceedings in
accordance with this opinion. 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed February 13, 2007.

Panel consists of
Justices Anderson, Hudson, and Guzman.

 

 









[1]  Tex. Civ.
Prac. & Rem. Code Ann. '
51.014(a)(7) (Vernon Supp. 2006).





[2]  Appellant Paulette Barker filed suit as the executor
of her husband Robert Barker=s estate as
well as in her individual capacity.





[3]   The record indicates that, of the ten defendants
named in Barker=s First Amended Original Petition, only two, appellee
and Michael Urban, filed special appearances. Urban=s was denied by the trial court and is presently on
appeal before this court in Michael Urban v. Paulette Barker, et al,
Cause Number 14-06-00387-CV.