**Affirmed and Memorandum Opinion filed October 27, 2011.**



In The

# Fourteenth Court of Appeals

### NO. 14-10-01129-CV

## S.L.A. STUDIO LAND, INC., Appellant

## V.

## SRC CONSTRUCTION, INC. AND SALVATORE R. CARABETTA, Appellees

**On Appeal from the 281st District Court
Harris County, Texas
Trial Court Cause No. 2007-13583**

## MEMORANDUM OPINION

In this appeal from the grant of the special appearances of appellees SRC Construction, Inc. and Salvatore R. Carabetta, appellant S.L.A. Studio Land, Inc. ("SLA") asserts that the trial court erred in failing to exercise both specific and general jurisdiction over SRC Construction and Carabetta.[1] SLA also challenges the sufficiency of the evidence to support several of the trial court's findings of fact and conclusions of law. We affirm.

---

[1] Although SLA included Moody Family Housing, L.L.C. and Carabetta Enterprises, Inc. in its notice of appeal and the title of its brief, its arguments are confined to the propriety of the special appearances of SRC Construction and Carabetta.

# BACKGROUND

In March 2004, SLA, a Texas corporation, contracted with Moody Family Housing, LLC ("Moody"), an out-of-state corporation with its principal place of business in Georgia, to provide community and landscape architectural plans and specifications for a military housing project in Georgia (the "Georgia project"). Moody hired SRC Construction, a Connecticut corporation, to manage the project in Georgia. Salvatore Carabetta, a Connecticut resident, was SRC's president. Carabetta Enterprises, Inc., another Connecticut corporation, was part-owner of Moody's corporate owner. When SLA was not paid for all of its work on the Georgia project, it sued Moody and several other entities associated with Moody.

In its live pleading, SLA alleged that Carabetta submitted numerous "Construction Escrow Account Disbursement Request Forms" to the Secretary of the Air Force. In these forms, Carabetta represented that SLA had performed services and requested specific amounts in compensation. Carabetta allegedly requested disbursement of funds to pay SLA; however, these amounts were not paid to SLA. SLA further asserted that Moody and SRC Construction submitted sworn forms indicating that certain payments which were to be made to SLA had not been made. In its pleading, SLA referenced the deposition of Clint Miller, a former employee of American Eagle Design-Build Studio ("AE Design-Build") who had performed work on behalf of AE Design-Build and American Eagle Communities, L.L.C. ("AE Communities"). SLA alleged that

> Miller revealed that . . . Moody [and] SRC [Construction] controlled the activities of both [AE Design-Build] and [AE Communities] in Texas with respect to the Moody Family Housing Project. Mr. Miller related that SRC took over the whole Moody Family Housing project and directed all of Mr. Miller's activities in Texas while he was working for [AE Communities] and [AE Design-Build]. Finally, Mr. Miller testified that Carabetta and SRC [Construction] had final approval as to which contractors, including [SLA], got paid and which ones did not. He added that [Carabetta Enterprises], [AE Communities], SRC [Construction] and Carabetta acted as one entity for a common purpose and all entities were directed by

2

Carabetta in his capacity as president of SRC [Construction] and [Carabetta Enterprises].

SLA further asserted that Carabetta was a managing member of AE Communities and AE Design-Build, both of which were headquartered in Texas. SLA stated that during the Moody project, Carabetta and other SRC Construction employees traveled to Texas "numerous" times in furtherance of the project. According to SLA, Carabetta controlled, supervised, and directed all activities of AE Communities and AE Design-Build in Texas. Finally, SLA alleged that (1) Kathryn Thompson, an employee of AE Communities and the "lead person" on the Moody project, and Miller were agents or employees of Moody, SRC Construction, AE Communities, Carabetta, and Carabetta Enterprises; (2) these defendants, their employees, or their agents made numerous telephone calls to Texas in furtherance of the Moody project; (3) SRC Construction supervised and directed all subcontractors on the Moody project, including SLA; and (4) all payments made by the defendants to SLA were made in Harris County, Texas.

Based on these allegations, SLA sued Moody, SRC Construction, AE Communities,[2] Carabetta, and Carabetta Enterprises for: (1) civil conspiracy against all the defendants, asserting that they operated as a joint enterprise and were the alter ego of Carabetta and Carabetta Enterprises; (2) recovery as a third-party beneficiary under a contract between AE Communities and SRC Construction; (3) breach of contract against SRC Construction based on its failure to obtain a performance bond as required by the contract between SRC Construction and Moody; (4) tortious interference with SLA's contract with Moody; and (5) fraud. SRC Construction, Carabetta Enterprises, and Carabetta entered special appearances contesting Texas's exercise of personal jurisdiction.

In his verified special appearance, Carabetta stated:

---

[2] Although SLA included AE Communities in its petition, the record reflects that AE Communities settled with SLA and was dismissed with prejudice from the suit.

- he is not a resident of Texas and does not maintain any office or agent in Texas;

- he owns no real or personal property in Texas;

- he has never submitted any invoices, bills, or draws for payment in Texas;

- he is not an officer or director of any Texas companies;

- he is not a general or limited partner in any Texas partnerships; and

- the alleged acts arising from or relating to SLA's cause of action against him did not occur in Texas.

In its verified special appearance, SRC Construction stated:

- it is a Connecticut corporation with a principal place of business in Meriden, Connecticut;

- there is no contract between it and SLA;

- the construction project on which SLA performed its work is located in Georgia;

- it is not a Texas resident and does not maintain any office in Texas;

- Carabetta, the president of SRC Construction, has never traveled to Texas on behalf of SRC; and

- no other SRC employee, officer, or agent has traveled to Texas to transact business on behalf of SRC.

Carabetta submitted an affidavit supporting the verified special appearances.

SLA responded to the special appearances of Carabetta and SRC Construction, asserting that the trial court had both general and specific jurisdiction over them. SLA supported its argument regarding general jurisdiction over SRC Construction by pointing to the following examples of its contacts with Texas: SRC Construction "took over" the Moody project and specifically directed activities in Texas; Keith Goldberg on behalf of SRC Construction and Carabetta decided which subcontractors were paid, *i.e.*, "SRC was making regular decisions as to whether or not Moody Family Housing would fulfill its contractual obligations to SLA"; the design-build contract between Moody and SRC Construction provided that SRC Construction "shall supervise and direct any subcontracted work [and] . . . shall be responsible for coordinating the services of all subcontractors, if any, to provide a complete and integrated Project; and finally, SRC

4

Construction entered into an additional contract with a Plano, Texas flooring company for the Moody project. Examples of general jurisdiction over Carabetta included Carabetta's asking Miller to call him on a daily basis, telling him Miller's agenda, and instructing Miller on what Miller should do on a particular day.

Regarding specific jurisdiction, SLA argued that the defendants did not plead and prove that SLA's cause of action did not arise from or relate to their contacts with Texas. Nor did they meet their burden to present a compelling case that the presence of some consideration would render jurisdiction unreasonable and violate the notions of fair play and substantial justice. Finally, SLA urged jurisdictional veil-piercing: the court should determine whether an entity is separate and distinct for jurisdictional purposes by taking into account the amount of the subsidiary's stock owned by the parent corporation, the existence of separate headquarters, the observance of corporate formalities, and the degree of the parent's control over the general policy and administration of the subsidiary.[3]

As factual bases for general jurisdiction, SLA noted that AE Communities, AE Design-Build, SRC Construction, and Carabetta Enterprises all had common offices and common record-keeping; SLA's invoices had to be approved by the AE companies, Carabetta, SRC Construction, and Carabetta Enterprises before they could be paid; and all the companies shared employees. SLA also provided affidavits from two former employees of AE Communities and AE Design-Build, Miller and Gary Kelley. In their affidavits, they both stated that (1) Carabetta traveled to Texas on behalf of SRC to look at steel framing as an option for the Moody project; (2) Keith Goldberg and Tony Padelli, employees of SRC Construction, each made at least two trips to Texas to conduct business on behalf of SRC Construction; and (3) Stephen Dicks, a project manager for SRC Construction, was eventually placed in charge of AE Design-Build, became the managing director of AE Communities, took over Goldberg's position with SRC

---

[3] As discussed below, nothing in our record indicates that SRC Construction, Carabetta Enterprises, AE Design-Build, or AE Communities had a parent-subsidiary relationship.

5

Construction, took over Miller's position as the design-build manager for AE Communities, and traveled to Texas at least twice on behalf of SRC Construction during the Georgia project.

At the hearing on the special appearances, Carabetta and SRC Construction relied on their verified special appearances, Carabetta's affidavit, and rebuttal affidavits from Goldberg, Padelli, Dicks, and Carabetta. These rebuttal affidavits were submitted in response to the affidavits of Miller and Kelley filed by SLA. In their affidavits, Goldberg, Padelli, and Dicks contradicted Miller's and Kelley's statements regarding their travel to Texas on behalf of SRC Construction and the Moody project. Further, Dicks stated that, contrary to the averments in Miller's and Kelley's affidavits, he was not "placed in charge" of AE Design-Build and never held a position with AE Communities. All three individuals stated that they were employees or former employees of SRC Construction. Finally, in his affidavit, Carabetta stated that he had never acted as the managing member of either AE Communities or AE Design-Build.

In response, SLA entered into evidence a form from the Texas Secretary of State indicating that Carabetta was a managing member of AE Design-Build. SLA presented deposition testimony from Miller, in which Miller stated that SRC Construction, Carabetta Enterprises, and the AE companies were all the "same" because they shared employees and a single individual controlled the money for all of them. SLA also relied on the affidavits of Miller and Kelley, discussed above.

Carabetta and SRC Construction filed a motion to supplement the evidence, which the trial court granted after the hearing on their special appearances. Carabetta provided another affidavit in which he stated that he had intended to file the paperwork with the Texas Secretary of State regarding AE Design-Build on behalf of Carabetta Enterprises, rather than himself individually. In other words, he averred that the managing member of AE Design-Build should have been Carabetta Enterprises, rather than Carabetta individually.

6

The trial court granted the special appearances on August 12, 2010, and signed findings of fact and conclusions of law to support its order. Because SLA did not file its notice of appeal during the time-frame permitted for an interlocutory appeal,[4] this court required that SLA demonstrate that the judgment was final and appealable. SLA supplemented the record with an order severing Moody from this case. Thus, the orders on the appellees' special appearances became final and appealable.

## ANALYSIS

In its first two issues, SLA asserts that the trial court had both general and specific jurisdiction over SRC Construction and Carabetta. In its third and fourth issues, SLA challenges the legal and factual sufficiency of the evidence to support numerous findings made by the trial court.

### A.  Standard of Review and Applicable Law

Whether a trial court has personal jurisdiction over a defendant is a question of law. *Schott Glas v. Adame*, 178 S.W.3d 307, 312 (Tex. App.—Houston [14th Dist.] 2005, pet. denied), *abrogated on other grounds by PHC–Minden, L.P. v. Kimberly–Clark Corp.*, 235 S.W.3d 163, 169 (Tex.2 007). The trial court, however, must frequently resolve questions of fact before deciding the jurisdictional question. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). If the trial court rules on a special appearance and issues findings of fact and conclusions of law, we review the findings of fact on legal and factual sufficiency grounds. *See Silbaugh v. Ramirez*, 126 S.W.3d 88, 94 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (citing *BMC Software*, 83 S.W.3d at 794).

Personal jurisdiction is proper if a defendant has established "minimum contacts" with Texas, and the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801,

---

[4] *See* Tex. R. App. P. 26.1(b).

806 (Tex. 2002) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "The purpose of the minimum-contacts analysis is to protect the defendant from being haled into court when its relationship with Texas is too attenuated to support jurisdiction." *Id.* Such an analysis requires that a defendant "purposefully avail" itself of the privilege of conducting activities within the state of Texas, thus invoking the benefits and protections of Texas law. *Id.*

Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either specific or general jurisdiction. *See PHC–Minden*, 235 S.W.3d at 166. Specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum. *See id.* General jurisdiction, in contrast, arises from continuous and systematic contacts with the forum such that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted in the forum state. *See id.*

## B.    Specific Jurisdiction

In its first issue, SLA asserts that the trial court erred in concluding it did not have specific jurisdiction over SRC Construction and Carabetta. In its related third and fourth issues, SLA challenges the legal and factual sufficiency of the evidence to support several of the trial court's findings regarding specific jurisdiction. We will address issues three and four insofar as they relate to SLA's assertion that the trial court has specific jurisdiction over Carabetta and SRC Construction.

As noted above, when specific jurisdiction is asserted, our minimum contacts analysis focuses on the relationship among the defendants, the forum, and the litigation. *Zinc Nacional, S.A. v. Bouche Trucking, Inc.*, 308 S.W.3d 395, 397 (Tex. 2010) (citing *Moki Mac*, 221 S.W.3d at 576–79). For a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation. *Moki Mac*, 221 S.W.3d at 585, 588. We may review the trial court's resolution of disputed fact issues for legal and

factual sufficiency under the same standards of review that we apply in reviewing a jury's or trial court's findings of fact at trial.[5] *BMC Software*, 83 S.W.3d at 794.

The following findings by the trial court support its determination that it lacks specific jurisdiction over Carabetta and SRC Construction:

26.     The alleged acts arising from or relating to the plaintiff's cause of action against Salvatore R. Carabetta did not occur in Texas.

36.     There is no evidence that Defendants made any misrepresentations in Texas on which Plaintiff could have relied.

37.     There is no evidence that Defendants conspired for any unlawful or improper purpose in Texas.

39.     Plaintiff's claims do not arise from or relate to Defendant's purposeful contacts with Texas.

The verified special appearances of Carabetta and SRC Construction, coupled with Carabetta's affidavit, support the trial court's findings. The contracts upon which SLA relies were neither with Carabetta nor SRC Construction. Instead, SLA points to its contract with Moody for the project in Georgia and Moody's contract with SRC Construction, again for the project in Georgia. Its fraud allegations have no relationship to Texas; the fraud alleged, if any, was committed by Carabetta against the Secretary of the Air Force, neither of whom are Texas residents. Further, our Supreme Court has determined that fraud, which may be relevant to piercing the corporate veil, has no place in assessing contacts to determine jurisdiction. *PHC–Minden*, 235 S.W.3d at 175.

For the foregoing reasons, we overrule SLA's first issue and those portions of its third and fourth issues related to the trial court's findings on specific jurisdiction.

---

[5] *See Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

9

## C.     General Jurisdiction

In its second issue, SLA contends that the trial court erred in determining that it lacked general jurisdiction over Carabetta and SRC Construction. As discussed above, general jurisdiction arises from continuous and systematic contacts with the forum such that the forum may exercise personal jurisdiction over the defendants even if the cause of action did not arise from or relate to activities conducted in the forum state. *See id.* at 166.

The trial court's findings supporting its lack of general jurisdiction over Carabetta and SRC Construction include:

- SRC Construction is a Connecticut corporation, has no office in Texas, and has no employees in Texas.
- One SRC Construction employee traveled to Texas on behalf of SRC Construction.
- No employees of SRC ever visited Texas to conduct business for SRC Construction related to the Georgia project.
- Carabetta is not an officer or director of any Texas companies.
- Neither Carabetta nor SRC Construction sought any benefit, advantage, or profit in Texas.
- There is a lack of continuous and systematic contacts with Texas so as to confer general jurisdiction over Carabetta and SRC Construction.

SLA asserts that the following evidence supports the exercise of general jurisdiction over Carabetta and SRC Construction:

1. Carabetta was the sole manager for AE Design-Build;

2. Moody contracted with SLA to have it perform the community planning and landscaping design for the Georgia project. SLA's work was largely performed in Houston;

3. The bills of SLA for work done in Houston were sent to Dallas for approval by AE Design-Build and Moody personnel who then sent them to SRC Construction for payment;

4. SRC Construction and Carabetta refused to release the funds approved and managed in Texas for the work done in Texas by SLA;

5. The persons hired to manage the Moody project, Kathryn Thompson and Clint Miller, were Texas residents;

6. Carabetta, on behalf of SRC Construction, entered into a design-build agreement with Moody in Dallas; and

7. Carabetta and Keith Goldberg of SRC Construction controlled the work being done in Texas.

First, as noted above, Carabetta swore in his affidavit that he had inadvertently signed paperwork in his individual capacity regarding AE Design-Build and that he had intended to sign this paperwork on behalf of Carabetta Enterprises. Second, the work done in Texas by SLA and the bills sent by SLA to the Dallas office of AE Design-Build are not contacts with Texas by either SRC Construction or Carabetta. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005) (it is the *defendant's* contacts with Texas that are important in determining jurisdiction). Third, even assuming that many of SLA's allegations regarding the "contacts" of Carabetta and SRC Construction are true, they fall short of conferring general jurisdiction on the trial court. For example, in *Helicopteros Nacionales de Columbia, S.A. v. Hall*, the defendant's chief executive officer visited Texas to negotiate a contract; accepted checks drawn on a Houston account, purchased helicopters, equipment, and training services from Texas; and sent personnel to facilities in Texas for training. 466 U.S. 408, 416–17 (1984). The United States Supreme Court concluded that these contacts were insufficient to form continuous and systematic contacts with the state so as to subject the defendant to personal jurisdiction. *Id.*

Similarly, the contacts of SRC Construction and Carabetta are not continuous and systematic. *BMC Software*, 83 S.W.3d at 789. General jurisdiction requires a more demanding analysis than specific jurisdiction and a showing that the defendants conducted substantial activities in Texas. *Id.* Neither SRC Construction nor Carabetta are Texas residents, neither have offices or employees in Texas, and neither conducted

11

substantial activities in Texas. Thus, SLA's second issue is overruled. Moreover, the trial court's findings regarding general jurisdiction are supported by the record. Hence, we also overrule its third and fourth issue to the extent SLA has challenged the trial court's factual findings regarding general jurisdiction.

## D.    Jurisdictional Veil Piercing

Throughout its brief, SLA alleges that the contacts of AE Design-Build and AE Communities should be imputed to Carabetta and SRC Construction, apparently attempting to pierce the jurisdictional veil. "[T]he party seeking to ascribe one corporation's actions to another by disregarding their distinct corporate entities must prove this allegation." *BMC Software*, 83 S.W.3d at 798. Courts have acknowledged that jurisdictional veil-piercing and substantive veil-piercing involve different elements of proof. *See PHC–Minden*, 235 S.W.3d at 174; *Daimler–Benz Aktiengesellschaft v. Olson*, 21 S.W.3d 707, 721 n. 5 (Tex. App.—Austin 2000, pet. dism'd w.o.j). This difference arises because personal jurisdiction involves due process considerations that may not be overridden by statute or common law. *PHC–Minden*, 235 S.W.3d at 174; *see also Capital Fin. & Commerce AG v. Sinopec Overseas Oil & Gas, Ltd.*, 260 S.W.3d 67, 89 (Tex. App.—Houston [1st Dist.] 2008, no pet.). The Supreme Court of Texas has outlined the following relevant factors for jurisdictional veil-piercing:

> To "fuse" the parent company and its subsidiary for jurisdictional purposes, the plaintiffs must prove the parent controls the internal business operations and affairs of the subsidiary. But the degree of control the parent exercises must be greater than that normally associated with common ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice.

*PHC-Minden*, 235 S.W.3d at 175 (quoting *BMC Software*, 83 S.W.3d at 799).

Here, there is no evidence that SRC Construction is the parent company of AE Design-Build or AE Communities or that SRC Construction controlled the internal business operations and affairs of these companies to any extent greater than that

normally associated with common ownership and directorship. *Cf. Greenfield Energy v. Duprey*, 252 S.W.3d 721, 731–32 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (explaining that a subsidiary corporation will not be regarded as the alter ego of its parent because of stock ownership, duplication of some or all of the directors or officers, or an exercise of control stock ownership gives to stockholders). Although Miller stated that SRC Construction, Carabetta Enterprises, and the AE entities were all the "same" because they shared employees and a single individual controlled the money for all of them, this bare allegation is insufficient to overcome the presumption that these companies are distinct legal entities. *See BMC Software*, 83 S.W.3d at 798–99. Further, there is no evidence that SRC Corporation is the alter ego of Carabetta. *See, e.g.*, *D.H. Blair Inv. Banking Corp. v. Reardon*, 97 S.W.3d 269, 277 (Tex. App.—Houston [14th Dist.] 2002, pet. dism'd w.o.j.) (stating that "'jurisdiction over an individual generally cannot be based on jurisdiction over a corporation with which he is associated unless the corporation is the alter ego of the individual'") (quoting *Vosko v. Chase Manhattan Bank, N.A.*, 909 S.W.2d 95, 99 (Tex. App.—Houston [14th Dist.] 1995, writ denied)). Although a corporate officer is not protected from the exercise of specific jurisdiction if the officer engaged in tortious or fraudulent conduct directed at the forum state,[6] we have previously determined that any fraudulent conduct committed by Carabetta was not directed toward Texas. Finally, any theory of "joint-enterprise" or "single-business-enterprise" as a basis for jurisdiction has never been endorsed by our Supreme Court. *See PHC-Minden*, 235 S.W.3d at 173–74.

Accordingly, the trial court's findings that Moody, AE Communities, and AE Design-Build are distinct legal entities and that no alter-ego relationship existed between Carabetta, SRC Construction, AE Communities, and AE Design-Build are supported by the record. These findings negate any theory of jurisdictional veil-piercing asserted by

---

[6] *See id.* (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

13

SLA.  To the extent that SLA has relied on these theories in any of its issues, these issues are overruled.

## CONCLUSION

In this case, the trial court lacked both specific and general jurisdiction over Carabetta and SRC Construction.  Its findings of fact are supported by the record.  Finally, there is no basis for jurisdictional veil-piercing in this case.  Accordingly, we overrule SLA's four issues and affirm the trial court's order granting Carabetta's and SRC Construction's special appearances.


/s/     Adele Hedges
Chief Justice



Panel consists of Chief Justice Hedges and Justices Anderson and Christopher.

14